James D. SELLENS, Appellant,

v.

Elvin CHRISTMAN, Respondent.

No. 52546.

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Motion for Rehearing or to Transfer to
Court en Banc Denied Sept. 11, 1967.

Brown & Normile, Edina, Rolin T. Boulware, Shelbina, for appellant.

Bollow, Crist & Bollow, Shelbina, Edwards, Hess & Collins, Macon, for respondent.

PRITCHARD, Commissioner.

The injuries for which plaintiff sues were occasioned by a felled tree, lodged in the top of another partially sawed tree on defendant's land, falling upon him necessitating amputation of his leg. The claim was for $25,000. The trial court directed a verdict against plaintiff at the close of his evidence upon the stated grounds that plaintiff had entirely failed to establish that the accident was in some way the fault of defendant and that the evidence showed plaintiff was himself at fault.

Orville Vanskike, a brother-in-law of plaintiff, was staying at plaintiff's home on

January 13, 1963, a Sunday. He saw defendant, Christman, there and heard a conversation between plaintiff and Christman about noon of that day. Christman said that he had a new chain saw and wanted to go try it out, to cut some wood. Christman brought up that desire first. Vanskike, plaintiff and Christman took a chain saw and two axes, they all got into Christman's car and went down into the timber on Christman's land. Christman didn't want the walnuts and red elms to be cut, and he first cut down what is denominated Tree No. 1.

It was stipulated: Tree No. 1 is 14 inches in diameter at the top of the stump 10 inches above the ground. Tree No. 2, 37 feet east and 9 feet 9 inches south of Tree No. 1, is 11 inches in diameter at a point 7 inches above the ground where it was cut. Tree No. 3 is 13 feet 11 inches south and 6 inches west of Tree No. 2, all measured from the centers of the trunks.

From Tree No. 1 there were some little trees to the south thereof where they wanted it to fall. Christman said, "Let's cut the brush so we can fell the tree." Upon being cut (by Christman) Tree No. 1 fell to the southeast but lodged at an angle of about 45 degrees in the top of Tree No. 2, a little to the west side of it. Christman said, "We got to get No. 1 down, got to get the trees down." He was having trouble with his chain saw and said, "Don, you get your chain saw. Get it, and while I'm fixing mine we can cut some more trees." Plaintiff then cut Tree No. 2 pretty well through but not clear off. Christman and all of them went to its northeast side and tried to push down the tree to the west, but it did not fall. They did manage to get the chain saw, stuck in the cut, loose. Vanskike then "hit it a couple of licks" with an ax on its other side (opposite to where it had been sawed), then all three tried to push it down again, but it didn't fall. Christman said, "It must be safe. We might as well clear out some more."

Plaintiff then sawed down Tree No. 3, which was 10 or 12 feet south of Tree No. 2 (stipulated to be 13 feet 11 inches south). Tree No. 3 fell straight to the west. Vanskike started trimming it with an ax and plaintiff "grabbed a saw and started up the tree to blocking it off," both being on the north side of it facing south. The chain saw was running and at the time of the accident plaintiff was on the second cut of the 8 to 10 feet long logs (16 to 20 feet from the stump). Trees Nos. 1 and 2 fell 8 to 10 minutes after the three had attempted to push over Tree No. 2. Vanskike was then facing west and was 6, 8 or 10 feet from plaintiff. There was no conversation between Christman and plaintiff between the time they attempted to push over Tree No. 2, and the time the first two trees fell upon plaintiff. Vanskike heard no warning given plaintiff by Christman about working on Tree No. 3 where he was actually working. Christman was then west of Vanskike about 10 or 20 feet, and was looking back toward Trees Nos. 1 and 2. Vanskike did not see the trees fall but heard the crash, and the main part of the body, about 40 feet from the bottom, and one limb struck plaintiff.

Pertinent portions of Christman's deposition, read as admissions against interest, are: He has been a farmer for 35 years, with 20 years' experience in cutting up trees, timber and working with logs, in selling stove wood. On January 13, 1963, the wood was to be for plaintiff and Christman; and that was the first time plaintiff had come to his place and worked in the woods. Christman decided to cut Tree No. 1, and an area was cleared of underbrush to the southeast of Trees Nos. 1 and 2. He had cut a lot of trees which had lodged in the tops of other trees, and always got them down. After plaintiff removed his chain saw and no longer cut on Tree No. 2, Christman did not thereafter say anything to him about the danger of working within 12 feet of Tree No. 2. Christman, having his back to plaintiff, did not see Trees Nos. 1 and 2 fall, and did not know they had fall-

en until Vanskike told him. Christman knew that plaintiff was on his knees cutting on the trunk of Tree No. 3, and that it was not possible for him to watch Trees Nos. 1 and 2 at the same time.

Plaintiff has owned two chain saws, the first, a used one, about 2 years prior to January 13, 1963. After six months, he purchased a new chain saw. He testified that chain saws are dangerous machines. His prior wood cutting experience was just in getting firewood. Christman first started the conversation by saying, "Let's go cut some wood." Plaintiff complained that it was too cold. Christman told him, "I could go to the timber with them and cut some wood and I could have some wood." The day was cold and the wind was blowing from the north and west (Vanskike testified it was not blowing strongly at the scene of the accident). Plaintiff cut Tree No. 2 seven inches above the ground, and was standing on its south side with the saw blade pretty well north and south on the east side of the tree, swinging the saw around to the north. Tree No. 2 moved about 2 feet and stopped, and plaintiff remembered nothing thereafter. On cross-examination, plaintiff testified that he had cut a few trees with a chain saw from 1952 to 1961, and had seen others cut trees with a chain saw and a crosscut saw. At one time Christman and plaintiff cut up some downed tree tops left by a stave bolt man on a farm operated by plaintiff.

■ The parties are in controversy as to whether plaintiff was a licensee or an invitee upon Christman's land. Viewed in the light most favorable to plaintiff, there was sufficient evidence which would have justified a finding by the jury that plaintiff was an invitee. At Christman's behest, plaintiff was to assist him in trying out the new saw and to cut firewood. This firewood was to be shared by Christman and plaintiff. The aid in cutting down the trees and converting them into firewood was a real benefit and convenience to Christman notwithstanding the fact that plaintiff would receive part of the wood. See the leading en banc case in this state, Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045, "But the situation, with reference to liability, radically changes when the owner invites the use of his premises for purposes connected with his own benefit, pleasure, and convenience. That change calls into play other rules of law, in order to do full and refined justice. The rule applicable to that change is that a licensee, who goes upon the premises of another by that other's invitation, and for that other's purposes, is no longer a bare licensee. He becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for the breach of that duty an action lies. (Citing cases) The word 'invitation' used in the rule covers and includes in it enticement, allurement, and inducement, if the case in judgment holds such features. Also, the invitation may be implied by a dedication, or it may arise from known customary use." See also Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820, 823 [4]; Abel v. Campbell 66 Express, Inc., Mo.App., 378 S.W.2d 269, 272 [4, 5]; Gruhalla v. George Moeller Construction Co., Mo.App., 391 S.W.2d 585, 594; Lynch v. Rosenthal, Mo.App., 396 S.W.2d 272, 277 [4, 5].

■ Although plaintiff's status was an invitee, under the facts and circumstances of this case there was no breach of any duty resting upon Christman to make the premises safe for plaintiff, or to warn him of the danger, the assignments of negligence below and here argued. In the invitee case of Dixon v. General Grocery Company, Mo., 293 S.W.2d 415, 418, the rules of 2 Restatement, Torts, § 343, were adopted, and the court went on to say, loc. cit. 293 S.W.2d 418 [2, 3], "'The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, ob-

vious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.' 65 C.J.S. Negligence, § 50, p. 541. (Citing cases and authority.) 'Thus, defendants as storekeepers are not liable for injuries resulting from open and obvious conditions which are or should be as well known to the invitee as to defendants.' Douglas v. Douglas, Mo., 255 S.W.2d 756, 758 [5]. '* * * and neither does he breach his duty to such an invitee when the condition complained of is open and obvious or as apparent to the invitee as it is to the owner or proprietor, because the basis of liability in such cases is the owner's superior knowledge. Murray v. Ralph D'Oench Co. [347 Mo. 365, 147 S.W.2d 623, 626 [1]]; * * * When the condition relied on is obvious or actually known to the invitee there is no duty on the owner to warn him. Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723 [728].' (Citing cases.) These decisions mean that an inviter is under no duty to protect an invitee who is in an equal position to protect himself. Where the danger is obvious or known to the invitee he consents to the risk and the inviter owes no duty."

Here, the plaintiff knew that Tree No. 1 was lodged high in Tree No. 2. He, himself, cut through the bole of Tree No. 2, leaving but 3 to 4 inches of its 11-inch diameter. His chain saw was stuck in the cut, and the three men rocked the tree sufficiently to remove the saw. Plaintiff saw the tree move about two feet after the saw and ax cuts had been made. The defendant, Christman, had no superior knowledge of the dangerous situation to that of plaintiff who helped to create the danger. Christman's assurance, "It must be safe. We might as well clear out some more" (offered here as an excuse to relieve plaintiff of contributory negligence), does not show a superior knowledge of this open, obvious, apparent danger of which plaintiff must be held to be aware, having helped to

create it. Under the foregoing authority, there was no duty upon Christman to warn plaintiff of the danger which was open, obvious and apparent to him. See also Kenward v. Hultz, Mo.App., 371 S.W.2d 344. Not only is this proposition true as to the danger in the possibility that Trees Nos. 1 and 2 might fall, but it applies to plaintiff's claim of Christman's negligence in clearing insufficient space into which the trees were to fall.

Plaintiff's cited cases of Liddle v. Collins Construction Company, Mo., 283 S.W.2d 474; Fletcher v. Kemp, Mo., 327 S.W.2d 178, and Beckett v. Kiepe, Mo.App., 369 S.W.2d 258, and others, are all employer-employee cases, and are inapplicable to rules of law applied to those entering lands of another as trespassers, licensees and invitees, which rules should not be extended beyond the ever-changing conditions of work, and consequent duties to provide a safe place to work in master-servant relationships.

While it was true that the environment in which plaintiff was working when he entered the premises was then safe, but was later made unsafe by the cut in Tree No. 2, that did not constitute active negligence on defendant's part which would entitle plaintiff to recover. Defendant did not commit any affirmative act toward plaintiff constituting negligence. Plaintiff, having helped to create the danger, and knowing of it, cannot escape those facts. His cited case, Cupp v. Montgomery, Mo. App., 408 S.W.2d 353, 360, so holds: " 'It is clearly the law that absence of knowledge of the dangerous condition, on the part of the plaintiff, is an essential element of plaintiff's case.' "

Humanitarian negligence in its element presented here of failure to warn, is likewise inapplicable because plaintiff was already aware of the existing danger of the trees falling. Besides, that doctrine applies to the operation of a dangerous instrumentality by a defendant, with the plaintiff within the range of the same being so oper-

**10**

ated as to be in imminent peril. Here, the evidence clearly shows that defendant was some distance to the west of the trees, and was not doing anything to cause the trees to fall at the time they fell so as to be under a duty to warn plaintiff.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.