Samuel KRAUS, Jr., Executor of the Estate of Samuel Kraus, Sr., Deceased, Appellant,

v.

AUXVASSE STONE & GRAVEL COMPANY, Respondent.

No. 54152.

Supreme Court of Missouri, Division No. 2.

Sept. 8, 1969.

Tyree C. Derrick and Derrick & Holderle, St. Louis, for appellant.

Evans & Dixon, William Wallace Evans, St. Louis, for respondent.

BARRETT, Commissioner.

In this action to recover $250,000.00 damages for personal injuries there was a jury verdict for the defendant and plaintiff has appealed claiming that he is entitled to a new trial.

The action and appeal arose in these circumstances: The Auxvasse Stone & Gravel Company was in the process of constructing a loading bin over the railroad tracks at Auxvasse so that railroad cars could be loaded with crushed stone "in a matter of minutes." The bin was of steel siding and I-beams on a concrete foundation and was to be 40 to 50 feet in height when completed. The job was nearing completion, I-beams were being hoisted and positioned by a crane with a 75-foot boom. Near one corner of the bin, at the steel-floor level and above the foundation, an opening 4 by 6 feet had been made in the siding and a ladder placed at the opening "so you could go up inside the bin." The work was being done by employees of Auxvasse Stone & Gravel Company and the Samuel Kraus Construction Company. There was a "back charge" by Kraus for its employees and material to Auxvasse. The plaintiff-appellant, Samuel Kraus, Sr., then aged 72 years, was president and majority stockholder of both companies and, in the language of the accountant for both companies, was personally "directing the operation of the erection of the rock bin storage." On December 9, 1965, Mr. Kraus and his nephew, Weber, had selected from a nearby pile certain I-beams to be used, called the "lighter" or "smaller" ones 6 to 7 feet long and weighing 100 to 150 pounds. Mr. Kraus climbed the ladder up to the opening "to see if they put it where we wanted it." When being hoisted, as was this particular beam, so that it could be lowered vertically the beam was fastened off center. When this particular beam was at the height of 35 to 40 feet and the signal had been given to lower it the beam slipped from the cable, struck the steel floor and "endovered," "just made a somersault and landed on top of the ladder and somersaulted again right on it" severely injuring Mr. Kraus. After the trial Mr. Kraus died from causes not connected with this occurrence and the appeal is prosecuted by his executor son.

The respondent does not claim that plaintiff failed for any reason to make a case, its defense was that under all the evidence a jury could reasonably find that Mr. Kraus was guilty of contributory negligence and therefore not entitled to recover. Upon this appeal plaintiff claims that the court erred in excluding proof by Arnold, superintendent of construction for Kraus for 18 years, that the I-beam slipped and fell "for one or the other of two reasons, either because the defendant failed to use a softener in tightening the choker around the beam or because the cable rolled up on one drum and then slipped over on to the other drum, which caused it to jerk, thus permitting the I-beam to slip out of the choker" and fall. Also connected with proof the appellant claims that the court erred in admitting evidence elicited on cross-examination of his witness Miller, an employee of Auxvasse who was operating the crane, that "a hundred or more beams had been lifted without one falling prior to the time the one fell that hit Mr. Kraus." But these two points are not the crux of the appeal—the meritorious and determinative question is whether the court prejudicially erred in giving Instruction 6 submitting whether Mr. Kraus was guilty of contributory negligence, as to the latter assignment only one facet of appellant's many claims need presently be noted and that is whether there was evidence to support the submission of contributory negligence.

In connection with all these assignments it must be kept in mind that the plaintiff's sole submission and theory of recovery was that the defendant "failed to properly fasten the 'I' beam in the choker so that it would not slip and fall." And factually this precise submission had to do with Mr. Kraus's nephew, Ed Weber, who for 32 years had been employed by Kraus Construction as its "assistant superintendent." Weber drove Mr. Kraus from his home in Richmond Heights to Auxvasse and after looking over the 2200-acre Auxvasse operation in general they began looking after the construction of the bin. Kraus and Weber were "straightening up our stockpile" and had selected certain suitable beams for use in the bin. Another employee put the designated beams on a truck and unloaded them at the construction site. (As with many trades and professions these workmen employed a technical terminology or jargon peculiar to their work and there will be no attempt to define the terms or to accurately use them in this opinion.)

But, as stated, the negligence relied on had to do with Weber. After engaging in the selection of a suitable beam it was he who secured the steel beam to the cable for hoisting. The cable was lowered and fastened to the beam, he said, "I tightened up the choker" (evidently a loop in the end of the cable), that is, he took a piece of pine 2 x 4 and struck the cable so that it would tighten up on the beam. These lengths of 2 x 4s were called "softeners" and in connection with the larger, heavier beams were placed against the steel beam and thus when tightened the choker bit into the wood lessening the likelihood of slipping—a process the plaintiff infers should have been employed with the beam involved here although not submitted as a ground of negligence. Here, after Weber engaged the cable and beam the superintendent signaled the crane operator to hoist the beam. Incidentally, Miller, the crane operator, said that the vast majority of the smaller beams were hoisted and placed without the use of softeners. Miller says that as he received the signal to lower the beam he saw "the cable jerk," the beam slipped from the cable and fell 35 to 40 feet to the steel floor.

■ It was in connection with Miller's testimony that one of the questions arose. He had said that over a two months' period hundreds of beams had been lifted without the use of softeners and that he had not "dropped one before this." This was objected to as "not proper" and now it is urged that it was prejudicially erroneous. It is said that it violates the rule that evidence or proof that "no accidents or injuries occurred at a particular place or to any person other than the one in question is not admissible to show freedom from negligence on the particular occasion or that the place or appliance was safe and not dangerous." It is not necessary to pause and consider whether the statement was designed for that particular purpose. As to the excluded evidence, Arnold, the superintendent, described the entire operation and his part in it. He sat on a beam near the top and signaled the crane operator. He had not seen this beam fastened to the cable, he said that after giving his signals the beam was "swung counterclockwise" over the bin and as he signaled to lower the beam into place he reached out to take hold of it and guide it but "it went straight through my hand" and hit the floor and the ladder. He had testified without objection that at least on one occasion the cable when "wound up" had jumped from one cable to the other (and this was one theory of the jerking on this occasion). Finally, this witness was asked on direct examination if from his experience he knew what caused the beam to slip and fall. An objection was sustained and plaintiff's counsel made the offer of proof that "the slipping of this cable (not the slipping and falling as submitted of the I-beam) was caused by one of two things: either because there was no softener, or because the cable rolled above the drum and jumped out."

It is not necessary to consider the numerous rules relied on or to explore the subject of whether experts could or could not express opinions or whether opinion evidence was necessarily required. Despite a seeming complexity, this was after all a rather simple, elemental operation of hoisting and placing steel beams. The operation was described in detail and inferentially if not directly opinions were expressed—they were certainly a fair inference from the facts related. The fact of some negligent conduct on the part of defendant has never been questioned but once the facts were all in the jury was as capable of drawing the proffered inferences of the possible causes as was Mr. Arnold. Phillips v. Shaw, Mo., 381 S.W.2d 768, 771. This is not a case in which, as with the use of a mud jack, there was no opinion by a qualified witness and hence no evidence upon which to base a counterclaim of negligence. Freeman Contracting Co. v. Lefferdink, Mo.App., 419 S.W.2d 266. In any event, accepting the possibility that the offer was of expert or opinion evidence, its exclusion or admission was in the court's discretion and there is in the circumstances of this trial no demonstrable abuse of discretion. Butcher v. Main, Mo., 426 S.W.2d 356. And so it was with Miller's testimony, it is not necessary to consider when if ever proof of no prior accidents is proper or improper (see the examination of the rationale of the rule in Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14), it is sufficient here to say that the subject was not entirely irrelevant, it may have related however to a collateral matter and in the circumstances of this case was not so manifestly inflammatory or prejudicial as to demand the granting of a new trial by this court. Jones v. Terminal R. Ass'n of St. Louis, Mo., 242 S.W.2d 473, 477–478.

Additional facts and circumstances as they may bear on contributory negligence are that Mr. Kraus, during the progress of the bin construction, was there daily and as to the conduct of the work and giving orders to one and all had the "ultimate say." He knew as much or more about the entire project as anyone, he was well aware of the fact that three or four men were working inside the bin at heights of 30 to 40 feet placing and welding the steel beams. He did not tell anyone that he was going up the ladder into the opening "to see if they put it where we want it"; in a deposition he said that he probably started "out the same time the boom went up." In similar work he had known of beams slipping and falling from cables. As to any rules connected with the work Arnold said, "Nobody gets under it. We don't have to tell them." And he said, despite precautions, there was ever present the possibility for one reason or another of beams slipping from the cable. As to rules Mr. Kraus said, "Well, we had rules nobody walk underneath the beam while they are lifting it."

As indicated at the outset, this appeal is not concerned with contributory negligence as a matter of law. Bollman v. Kark Rendering Plant, Mo., 418 S.W.2d 39; Bridges v. Arkansas-Missouri Power Co., Mo.App., 410 S.W.2d 106. In the latter case, cited by appellant, it was held that a boy's contributory negligence in climbing a tree and coming in contact with a high tension wire was a jury question. In any event, who could reasonably deny in all these circumstances that there was evidentiary support for a jury finding of contributory negligence? Compare: Brassfield v. Sears, Mo., 421 S.W.2d 321 and Moore v. Kopp, Mo., 400 S.W.2d 176. In the latter case, to illustrate, it was prejudicially erroneous to submit as contributory negligence failure to warn when there was no evidence to support the submission. This particular construction project, comparatively simple was nevertheless on its face an obvious warning of hazard to anyone entering the area during working hours and there was no room for the rule of foreseeability and anticipation on the part of employees, particularly, it may be said, as to Mr. Kraus. Taylor v. Dale-Freeman Corp., Mo., 389 S.W.2d 57. As Mr. Arnold said, "Nobody gets under it.

We don't have to tell them," and certainly no one had to tell Mr. Kraus that danger was ever present. The fact that the possible finding of contributory negligence is so plainly supported obviates the necessity of unduly lengthening this opinion in distinguishing a number of cases relied on by the appellant. For example, cases based on a lack of knowledge of danger, assurances of safety and acting or failing to act with knowledge and appreciation of danger. Gitterman v. Danella, Mo., 356 S.W.2d 52; Trautloff v. Dannen Mills, Mo.App., 316 S.W.2d 866; Gruetzemacher v. Billings, Mo., 348 S.W.2d 952.

■ As against the plaintiff's submission of the defendant's negligence in failing "to properly fasten the 'I' beam in the choker so that it would not slip and fall and hit plaintiff" the defendant submitted the contributory negligence of Mr. Kraus in this language:

> "First, plaintiff, in the exercise of ordinary care, could have known that the beam was being hoisted over and into the bin and of the danger of the beam slipping from the choker; and

> "Second, plaintiff moved from a position of safety to a place where he would be in danger if the beam slipped from the choker and fell; and

> "Third, plaintiff was thereby negligent, and

> "Fourth, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

As stated plaintiff claims that there was no evidentiary support for the instruction, particularly for the submission that he was in a place of safety and moved to a position of danger, "nor is there any evidence to support the submission that being on the ladder where he was hurt was a dangerous place." As to the language quoted from appellant's brief reference to the instruction alone reveals that there was no mention of or submission of "being on the ladder." Albeit, as indicated, not only was the ladder a dangerous place, the area was dangerous. Other claims of lack of evidentiary support have been considered and it is not necessary to demonstrate at length, the all but self-evident fact, from plaintiff's own testimony as well as upon the entire record, that moving from an area outside the bin into the arc of the boom to the ladder and to the opening into the bin was indeed moving into a position of danger.

Other objections to the instruction are that it is an impermissible departure from MAI 28.01. In this connection it is said that the instruction is a combination of 28.01 and 17.04, an attempt to improve upon 28.01 "but in so doing, it perverted the use of 28.01, adulterated the application of 17.04 and aborted the efficaciousness of both." A lengthy and rather ingenious argument is made in an attempt to demonstrate that "this attempted improvement is contrary to the injunctions formulated by the committee" and finally appellant risks the suggestion of a proper and appropriate contributory negligence instruction.

In the first place, cases decided prior to May 24, 1964, and cases not directly involving MAI instructions concerned with contributory negligence (MAI instructions p. xxv), for example, Capriglione v. Southwestern Bell Tel. Co., Mo., 376 S.W.2d 205 and Russo v. Garrison, Mo.App., 357 S.W.2d 257, and instances of plaintiff's instructions, Bollman v. Kark Rendering Plant, supra, are not too persuasive or helpful. The basic weakness in appellant's argument, however, is the implied assumption that there was a specifically applicable MAI instruction. As a matter of fact there was no specifically applicable pattern instruction as in Hunter v. Norton, Mo., 412 S.W.2d 163, and so pursuant to Civil Rule 70.01(e), V.A.M.R., respondent adapted MAI 28.01. Leathem v. Longenecker, Mo., 405 S.W.2d 873, 877. It is neither necessary nor desirable to detail and answer seriatim every objection or demonstrate the applicability or inapplicability of each of the appellant's arguments,

it is sufficient to say that elements essential to a finding of contributory negligence were not omitted as in Pollard v. General Elevator Engineering Co., Mo., 416 S.W.2d 90, thus permitting the jury to resort to speculation and conjecture in finding contributory negligence. In short, lacking an applicable MAI pattern, Instruction 6 fairly and in the spirit of the rules submitted the contributory negligence of Mr. Kraus in the peculiar and particular circumstances of this case.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., and HOLMAN, Alternate J., concur.

FINCH, J., concurs in result.

MORGAN, J., not sitting.