Diana **GOTTMAN** et al., Plaintiffs-
Respondents,

v.

**NORRIS CONSTRUCTION COMPANY,**
etc., Defendant-Appellant.

No. 35624.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 3, 1974.

Motion for Rehearing or Transfer Denied
Oct. 15, 1974.

Application to Transfer Denied
Dec. 16, 1974.

Roberts-Mulford Law Office, Russell D. Roberts, Kirksville, for defendant-appellant.

Frick & Frick, William Y. Frick, Kirksville, for plaintiffs-respondents.

WEIER, Judge.

Widowed at age 23, Diana Gottman, together wtih her two infant sons, filed suit against the defendant, Norris Construction Company, for the wrongful death of her husband, Robert Eugene Gottman, who was killed on U. S. Highway 136, east of Lancaster, Missouri, in a single car, one occupant accident, on November 29, 1970. Plaintiffs received a verdict and judgment in the sum of $50,000.00 on June 28, 1973. Defendant contends error in the failure of the trial court to sustain its motion for directed verdict at the close of all the evidence on the ground, among other things, that plaintiffs had failed to make a submissible case of negligence, and further that even assuming plaintiffs' evidence was sufficient to establish negligence, plaintiffs nevertheless failed to establish that such negligence was the proximate cause of death. We review the facts.

Defendant Norris Construction Company, pursuant to a contract with the State of Missouri, was in the process of laying an asphalt deck over the old surface of U. S. Highway 136 from Lancaster, Missouri, eastwardly to Downing, Missouri. The project required the laying of two courses of asphalt on the existing road surface. In addition, the defendant obligated itself to raise the shoulder level even with the newly raised surface of the highway. In order to raise the shoulder to the new level, the old shoulder had to be scarified, the grass scraped away, and then new materials added in the depressed area to bring the shoulder up to level. At the time of the accident, which gives rise to this law suit, the shouldering operation had not been completed where the fatal accident occurred. Defendant, in accordance with the terms of its contract with the state, had placed warning signs and devices along the roadway to inform motorists of the construction project. "Low Shoulder" signs had been placed on both sides of the highway where the shoulder was depressed, 500 to 1,000 feet apart. These signs had a yellow background around the warning letters and were painted with reflectorized paint.

The fatal accident occurred sometime between 6:00 p. m. and 10:00 p. m. on November 29, 1970. No one witnessed the accident. Mr. Gottman's body and car were discovered in a hayfield north of the highway at about 10:00 p. m. On that date Gottman and his brother-in-law had traveled along the construction project several times. They had gone on a venture to purchase a stove for their mother-in-law, and their respective wives and families had visited together. When the two men returned to Lancaster to the gasoline filling station where Gottman was employed as manager, they found a note in his automobile to the effect that his wife had gone on to the farm home of his brother-in-law near Downing with her sister. The brother-in-law left Lancaster to go east to Downing, and Gottman remained at the filling station to check out the day's pro-

ceeds. He was to travel from Lancaster to Downing later that evening to pick up his family.

The area was extremely foggy the night of the accident. Gottman's brother-in-law noticed it was getting foggy when he and Gottman arrived in Lancaster. The fog density was corroborated by several of plaintiffs' witnesses who traveled past the accident scene that night. All testified that the fog was unusually heavy and that they drove at very slow rates of speed. These witnesses further testified that because of the fog it was not possible at all times to determine the location of the edge of the blacktop.

Proceeding from west to east, the same direction that Gottman traveled the evening of November 29, before approaching the scene of the fatal accident, there is a low place where a bridge crosses a stream. The highway then ascends a hill leading to a curve to the left where the fatal accident occurred. The Gottman car left the highway with its right wheels, according to physical evidence at the scene, where the highway begins this curve. At this point and at this time the level of the shoulder was approximately seven inches below that of the new surface of the pavement. The right wheel tracks of the Gottman automobile, after leaving the pavement, paralleled it in its course of travel. These tire tracks indicated that Gottman continued to turn his vehicle to the left as the road curved, and that he attempted to get back on the highway. Gottman's automobile regained the paved surface of the highway after traveling 397 feet. At this point a single tire mark extended diagonally in a northeast direction across the highway for a distance of 135 feet. The car then left the pavement on the north side of the highway, and after a course of 69 feet, tore open a fence along the rightaway line. It continued 33 feet into a field where it was found standing on all four wheels facing west. The automobile had sustained extensive damage to the left side and when found had both the trunk

lid and the hood open. Gottman's body was discovered northeastwardly from the automobile some 36 feet near the car battery which had been thrown out of the front of the automobile.

Plaintiffs produced an expert witness who testified without objection concerning generally accepted standards of safety by highway contractors. Identifying various standards promulgated by the Associated Contractors of America and publications of the Federal Highway Administration, he stated that considering the condition of the highway at the time of the accident, defendant's signing was inadequate. According to this expert, the defendant should have utilized other and different traffic control devices, principally consisting of reflectorized delineators which should be placed at the location of an identified hazard. These delineators, three to four inches in diameter, should have been fastened on a street post with the post driven straight into the ground approximately two feet outside the pavement edge.

It was conceded by plaintiffs that Gottman was acquainted with the new surfacing project and the condition of the roadway. He and his brother-in-law had made a round trip between Lancaster and Downing during the daylight hours of November 29. The widow testified that she and her husband had traveled the road on several occasions during that summer; that she was acquainted with the difference in elevation between the pavement and the shoulder; and that she had seen "Low Shoulder" signs.

Plaintiffs charged negligence in their petition on defendant's failure "to furnish, place and maintain adequate devices sufficient to warn nighttime motorists eastbound on said highway of the aforesaid dangerous condition, and the location and position thereof with reference to the south edge of the surface of said lane of said highway." The case was submitted to the jury upon a verdict directing instruction which required the jury to find that "de-

fendant failed to use ordinary care to warn of the particular location of such danger, and was thereby negligent, * * *."

No contention is made here that defendant construction company was negligent in connection with its conduct of the essential construction work. Operating under a contract with the State Highway Commission, it was lawfully engaged in changing the traveled surface of the highway, and, in conjunction therewith, rebuilding the shoulders. As a necessary part of its operation, it had to prepare the depressed area of the shoulder before materials could be added and the shoulder then raised to the level of the paved surface. As previously indicated, in the petition and the instructions submitting the case, the alleged negligence of the defendant consisted in failing to warn plaintiffs' decedent of the specific location of the hazard which, according to their expert, defendant could have more adequately delineated. But plaintiffs' decedent had knowledge of the low shoulder, having ridden over the highway at this point two times during the day prior to the time that the accident occurred. Plaintiffs' counsel conceded during the trial that Gottman knew that there was a low shoulder on the road and that he didn't need any "Low Shoulder" markers because he had lived in the neighborhood, and like everyone else, knew that there was a low shoulder. Under such facts and circumstances, the issue of proximate cause becomes one of first importance.

The proximate cause of injury is one of the essential elements of actionable negligence. Teichman v. Potashnick Construction, Inc., 446 S.W.2d 393, 398 [4] (Mo.banc 1969). There, knowledge on the part of plaintiff of a low place in a roadway precluded the failure of a contractor to warn plaintiff of this condition from being the proximate cause of injury under circumstances similar to the facts here presented. *Teichman, supra* at 398 [5]. This is for the reason, as stated there, no one needs notice of what he already knows

and appreciates. In *Teichman,* plaintiff had traveled the road and had passed the hole in the surface of the roadway that had been caused by defendant's trucks within an hour of the time of the accident. He had discussed the location with his host driver and as the court there stated, a posted warning would have served no useful purpose. As was so well said by Judge Bennick in Feeherty v. Sullivan, 129 S.W. 2d 926, 928 [2] (Mo.App.1939): "Now while failure to warn may constitute actionable negligence under proper circumstances, it is only so where the plaintiff or party complaining of the failure was oblivious to the impending peril, since if he was aware of the danger and had all the sufficient and timely notice of the same that a warning signal could have afforded him, then the defendant's failure to have given a warning could not be deemed to have been the proximate cause of the ensuing injury."

Considering the facts and circumstances that existed here according to the evidence, we do not know why Mr. Gottman drove off the surface of the highway. It is true that the weather conditions were bad and that it was nighttime. Whether Gottman drove the two right wheels of his car onto the shoulder to avoid an oncoming vehicle, or whether from inattention, or whether because he did not know the exact location of the edge of the roadway, one is unable to determine. It is known that he drove some 397 feet with the right wheels of his vehicle on the low shoulder before he drove back on the pavement. We have no knowledge as to the speed of his vehicle and we have no knowledge as to whether he tried to slow or stop the car after he found that it was off the paved portion of the highway. We do know that after he regained his position on the pavement, that he then traveled northeastwardly

across and off the pavement, continued over the remainder of the right-of-way, through a fence and into a field where he met his unfortunate demise after a total erratic vehicular travel of 634 feet.

The burden is on the plaintiffs to prove that the negligence charged was the proximate cause of death and this burden is not met if resort must be made to speculation. James v. Sunshine Biscuits, Inc., 402 S.W.2d 364, 375 [2] (Mo.1966). The test on causal connection is whether facts show that in the absence of the negligence charged, the injury would not have been sustained. *James, supra* at 375 [3]. Where evidence connecting the injury with the alleged negligence amounts to mere speculation and conjecture, the court must not allow the case to be submitted to the jury. And in such an instance, a contention that the evidence did not make a submissible case should be sustained. Bauman v. Conrad, 342 S.W.2d 284, 288 [7] (Mo.App.1961). When we consider the facts here presented by the evidence, we cannot truthfully say that absent the failure to warn Gottman, his death would not have occurred. There is no direct evidence to indicate failure to warn caused him to drive onto the low shoulder and thence back across the highway to his death; and the circumstances do not lead one to this inference unless one resorts to speculation and conjecture. The trial court should have sustained defendant's motion for directed verdict.

Since resolution of this issue is dispositive of the case, the other points relied on by defendant need not be considered.

The judgment is reversed.

DOWD, C. J., and SIMEONE and KELLY, JJ., concur.