David L. OGDEN and Marian Ogden, his wife, Plaintiffs-Appellants,

v.

Alexander TOTH, Defendant-Respondent.

No. 36996.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 27, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Nov. 8, 1976.

---

Gallego & Mueller, Jack Juaquin Gallego, Troy, for plaintiffs-appellants.

Niedner, Moerschel, Nack & Ahlheim, Robert V. Niedner, St. Charles, for defendant-respondent.

WEIER, Presiding Judge.

This appeal arises out of a personal injury suit involving a tree cutting accident. The jury returned a verdict for plaintiff David L. Ogden, Sr. in the sum of $30,000.00 and for plaintiff Marian Ogden in the sum of $4,000.00. The trial court sustained defendant's motion for judgment in accordance with his motion for a directed verdict and entered judgment for defendant with an alternative order granting defendant's motion for a new trial on the ground that the verdict was against the weight of the evidence. Plaintiffs have appealed. We reverse the judgment for defendant and affirm the order granting a new trial.

In determining whether the trial court erred in setting aside the jury verdict and entering judgment for defendant, we consider only the evidence most favorable to plaintiffs and the reasonable inferences to be drawn therefrom, and disregard defendant's evidence unless it aids plaintiffs' case. *Woodford v. Illinois Central Gulf Railroad Co.*, 518 S.W.2d 712, 715[1] (Mo. App.1974). We "bear in mind that a court should never withdraw a question from the jury unless all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue; that where there is uncertainty arising from a conflict in the testimony or because, the facts being undisputed, fair-minded men would honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury; * * *." *Sippel v. Custom Craft Tile, Inc.*, 480 S.W.2d 87, 89[1] (Mo.App.1972). We review the facts favoring plaintiffs.

Prior to December 2, 1973, arrangements were made between plaintiff David L. Ogden and defendant Alexander Toth for Mr. Ogden to cut down some trees on defendant's property. Mr. Toth wanted to clear out a surplus of trees in his front lawn and to widen his driveway. Mr. Ogden's brother-in-law, Marian Ogden's brother, William Wolf, was to get the firewood. Mr. Ogden and Mr. Toth were friends and neighbors, and each had done things for the other in the past without charge. On Sunday morning, December 2, 1973, David L. Ogden, his wife, Marian Ogden, their son of seventeen years, David L. Ogden, Jr., and Mrs. Ogden's brother, William Wolf, assembled at the Toth residence to begin work. The felling of the larger trees was done by Mr. Ogden with his chain saw. William Wolf cut up the trees after they were on the ground. David Ogden, Jr. and Mr. Toth stacked the wood. One tree in the backyard, where the cutting began, was leaning steeply over a shed. To prevent it from falling onto the shed it was agreed that a cut should be made high to let the top portion fall short of the shed before making a second cut at the base and letting the lower portion fall. This was done successfully. A similar procedure was followed a short time later in the front yard on a tree leaning toward the house but this time

there were complications resulting in injuries to Mr. Ogden, Sr.

The tree in question was a white oak approximately twelve to fourteen inches in diameter at the base and approximately eight to ten inches in diameter where the upper cut was made. Mr. Ogden stated that it was "a pretty fair size tree", perhaps fifty feet high. It was described as leaning "quite steeply", as having a "severe lean", and as "laying on a heck of an angle" toward the house to the east. The tree was just south of the driveway which extended from the north side of the house out to the highway.

After the group assembled in the front yard, Mr. Ogden and Mr. Toth participated in a discussion in which everyone present agreed that the best method to cut this tree would be to cut it high, let the top portion fall, and then cut it at the base. This method had been successful that day in felling another tree that leaned toward a shed. Mr. Ogden climbed up a ladder and made a cut into the tree somewhere between eight and fourteen feet from the ground. The top portion fell east toward the house in the direction it had been leaning. It landed partly on the front lawn and partly on the driveway. The butt end of this top, nearest the cut, was still hinged to the bottom or trunk part of the tree, attached by a flap of wood and bark. Mr. Ogden cut the two pieces free but the butt end of the tree top still did not fall. One end of a rope was then tied to the upper cut portion of the tree and the other end stretched out in a north-northwesterly direction. Four men, David Ogden, Sr., David Ogden, Jr., William Wolf and Alexander Toth, pulled on the rope but the upper portion still did not move.

Mr. Ogden told the other men to "drop the rope". Mr. Wolf and David Ogden, Jr. let go of the rope but Mr. Toth continued to hold the rope taut, pulling and putting some tension on it. Mr. Ogden, Sr. knelt down at the base of the tree and began cutting into the trunk. He was at the northwest side of the tree and not under the upper portion. Defendant Toth testi-fied that Mr. Ogden was on the "opposite side from the portion, the top portion of the tree that was cut." Mr. Ogden's right knee was on the ground and his left leg extended out to the side. Mr. Ogden's back was to Mr. Toth and the rope extended over Mr. Ogden's left shoulder. He did not know that Mr. Toth was pulling on the rope. When Mr. Ogden had cut approximately three quarters of the way through the trunk, the top portion fell, striking Mr. Ogden across his back and left leg, resulting in serious injuries. The testimony showed that the upper portion fell in the direction the rope was being pulled. Marian Ogden testified that the "tree came the way the rope was". In response to the question: "In which direction did the log come down?", David Ogden, Jr. answered: "The direction the rope was being pulled and back a little." The following exchange took place between plaintiff's attorney and defendant Toth:

"Q. Now is it fair to say that when that tree did come down, that she came down in the direction in line towards that rope?
A. Towards the rope?
Q. Yes.
A. Yes, sir.
Q. It did?
A. Yes, sir.
Q. It came towards and in line with the rope and then down; is that correct?
A. Yes, sir.
Q. And Mr. Ogden was then to the northwest and cutting in and the tree came back and down; is that correct?
A. Yes, sir.
Q. In line with the rope?
A. Yes, sir.
Q. In line with the the way the rope was being pulled; is that correct?
A. Yes, sir."

Mr. Wolf testified that after the upper portion struck Mr. Ogden it rested on the ground about three or four feet to the side (north) and somewhat to the rear (west, apparently) of the stump. Mr. Wolf also

testified that after Mr. Ogden had been taken to the hospital, Mr. Wolf could rock the lower portion of the tree (which was still standing) back and forth with his hand. Mr. Toth also mentioned some shaking.

The trial court stated in its order granting defendant's motion for judgment in accordance with his motion for directed verdict that it was granting the motion for the reasons stated in defendant's motion. Of the reasons stated in defendant's motion, we consider two: Whether there was "no substantial evidence of negligence of this defendant which was a cause of plaintiffs' damage", and Whether "[t]he evidence showed that Plaintiff David L. Ogden was guilty of contributory negligence as a matter of law."

On the issue of defendant's negligence, there was sufficient evidence of a breach of a duty of due care in defendant's affirmative act of pulling on the rope in the direction Mr. Ogden was working even though Mr. Ogden had told him to drop the rope. This is much different than *Sellens v. Christman*, 418 S.W.2d 6 (Mo.1967), where defendant took no affirmative action toward plaintiff. In that case a cut tree lodged at an angle of about forty-five degrees in the top of a second tree. Plaintiff cut the second tree "pretty well through but not clear off." Three men including plaintiff then tried to push the trees down but only succeeded in rocking them about two feet. While plaintiff was cutting up a third tree nearby, the first two trees fell on him. The court held under these circumstances that not only was there no negligence on the part of the defendant-property owner because he was under no duty to protect plaintiff from an obvious danger that plaintiff had helped to create, but in addition defendant had committed no affirmative act toward plaintiff constituting negligence. Here, defendant had superior knowledge of a dangerous condition and was actively negligent toward plaintiff in continuing to pull the rope when he was told not to do so. As to active and passive negligence of possessors of land generally, see *Arbogast v. Terminal Railroad Association of St. Louis*, 452 S.W.2d 81, 84 (Mo.

1970); *Cupp v. Montgomery*, 408 S.W.2d 353, 356 (Mo.App.1966).

The proximate cause issue is more difficult to resolve. In considering this issue we bear in mind that questions of proximate cause are ordinarily for the jury. *Pollard v. General Elevator Engineering Co.*, 416 S.W.2d 90, 95[2] (Mo.1967); *Robinson v. St. John's Medical Center, Joplin*, 508 S.W.2d 7, 13[15] (Mo.App.1974). In addition, "absolute and mathematical certainty is not required. It is sufficient if there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission. And this can be determined by reasonable inference from proven facts or circumstantial evidence. Where the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred, and they *did* occur, the question of causal connection is sufficient to go to the jury." *Steele v. Woods*, 327 S.W.2d 187, 195[7, 8] (Mo.1959).

Defendant contends that it was physically impossible for one man to pull down the upper portion of this tree when four men could not budge it earlier, that such a theory is manifestly untrue and should be disregarded. In support of this contention defendant cites cases where physical facts, objective measurements or photographs overcame testimony to the contrary. *Kelly v. Terminal Railroad Association of St. Louis*, 315 S.W.2d 699, 702[1, 2] (Mo.1958); *Lohmann v. Wabash R. Co.*, 364 Mo. 910, 269 S.W.2d 885, 891[6] (1954). In this case, however, there was testimony showing that the trunk had been loosened by cutting it at the base, and this explains why it was possible for one man to pull it down then when four men could not do so earlier. Testimony of defendant's expert witness, Gilburt Butler, reinforces this conclusion. Furthermore, even if the upper portion began to fall through no fault of defendant, the tension on the rope could have deflected or influenced the course of the limb toward plaintiff on its way down.

Defendant also contends that an inference of proximate cause in this case is speculation, guesswork and conjecture on the part of the jury, and not a reasonable, or permissible, inference. We consider the cases which he believes support this contention. In *Gottman v. Norris Construction Co.,* 515 S.W.2d 861, 864[4, 5] (Mo.App.1974), a motorist ran onto the low shoulder of a highway under construction and back across the road to his death. Plaintiff contended that the construction contractor was negligent in failing to warn the motorist of the low shoulder. But plaintiff's decedent knew the condition of the highway and the hazard of the low shoulder from previous travel over the same roadway. In *Schabbing v. Seabaugh,* 395 S.W.2d 256 (Mo.App. 1965) plaintiff's husband was killed as a result of being thrown from the seat of defendant's tractor when it struck a hidden hole. The court held at 260[9] that even if defendant owed a duty to supervise plaintiff, his failure to do so was not the proximate cause of plaintiff's death since no amount of supervision would have allowed defendant to see a hole that was hidden from plaintiff's view. The accidents in *Gottman* and *Schabbing* would have occurred even if the defendants had not been negligent and in such situations the juries were not allowed to speculate on proximate cause. In this case, however, the jury could reasonably infer that defendant's active negligence in pulling on the rope was the proximate cause of plaintiff's injuries in one of two ways.

First, the jury could reasonably infer that defendant pulled the upper portion off of the trunk onto plaintiff after the trunk had been weakened by the cutting at the base. Without the tension on the rope the upper part could have stayed in place until the trunk was cut through when plaintiff would be expecting both pieces to fall. Second, the jury could reasonably infer that even if the upper part began to fall solely because of the weakened trunk, defendant influenced or deflected the path of the limb on its way down, causing it to fall on the north side of the trunk and somewhat to the northwest, rather than allowing it to fall either straight down short of the trunk to the east or to the opposite side of the trunk to the south. The record is somewhat unclear on the angle of lean in this trunk, the exact height of the first cut, and the length of the upper portion of the tree, all relevant factors in determining whether the upper portion could have fallen straight down short of the base to the east. However, viewing the evidence in the light most favorable to plaintiffs (that the trunk leaned severely to the east, that the first cut was made only eight or ten feet from the ground, and that the upper portion was quite long), we believe there was sufficient evidence from which the jury could reasonably find that the upper portion could have fallen straight down to the east of the base and that it did not fall that way because defendant deflected it to the north-northwest. This case is similar to *Penberthy v. Penberthy,* 505 S.W.2d 122 (Mo.App.1973). In that case defendant negligently failed to secure himself while he and plaintiff were standing on a brush pile. Defendant lost his footing and knocked plaintiff to the ground when his chain saw cut through a limb more rapidly than he expected. The court held that under these facts there was a jury question on the issue of proximate cause because the jury could reasonably find that defendant could have secured his position and prevented the accident and that some injury to plaintiff was reasonably foreseeable if defendant did not secure himself. *Penberthy, supra,* at 127[5–8].

Defendant next contends that plaintiff was guilty of contributory negligence as a matter of law in failing to notch the first cut, in failing to use a pickup truck to pull down the upper portion, and in cutting the base of the tree knowing this to be dangerous. The issue of contributory negligence is always for the jury unless, from the evidence viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was guilty of negligence proximately causing his injury. *Dalby v. Hercules, Inc.,* 458 S.W.2d 274, 277[1] (Mo.1970); *Brown v. Missouri Pacific Railroad Co.,* 510 S.W.2d 846, 849[4, 5] (Mo.App.

1974). If reasonable minds can differ on the question of contributory negligence, we cannot say as a matter of law that the case is not submissible to the jury. *Ferguson v. Air-Hydraulics Company,* 492 S.W.2d 130, 134[1] (Mo.App.1973).

■ Gilburt Butler, an expert on tree cutting, testified that a person using ordinary care would notch the tree on the side he wanted it to fall before cutting it through so that it would be less likely to hinge. However, on cross-examination Mr. Butler admitted that he did not always notch trees, and that if a tree were leaning a certain way and a square cut were made on it, one could expect it to fall straight down in the direction it was leaning. In addition, there is evidence that a tree that had been leaning toward the shed in the backyard was successfully removed by the same method, apparently without notching. Under these circumstances we cannot say that plaintiff was guilty of contributory negligence as a matter of law in failing to notch the tree.

■ Defendant next maintains that plaintiff was contributorially negligent in failing to pull down the upper part of the tree with a rope tied to a pickup truck. But defendant himself testified that using a pickup truck probably would have been to no avail, as the ground was wet and had been seeded, and there probably would not have been any traction. The jury could also reasonably find from the evidence that a pickup truck could not be used on the driveway because of the angle of the limb in relation to the direction the driveway ran, and because the upper portion of the tree partially blocked the driveway. The question of plaintiff's negligence, if any, in not pulling the limb off with a pickup truck was for the jury.

■ Defendant also contends that plaintiff was guilty of contributory negligence in cutting the base of the tree while the upper part was still lying on the trunk, knowing this to be dangerous. We consider defendant's cited cases. In *Sellens v. Christman, supra,* 418 S.W.2d 6, discussed above, the trial court directed a verdict against plaintiff on the grounds that plaintiff had failed to show that the accident was the fault of defendants and further that the evidence showed plaintiff himself to be at fault. Because the Missouri Supreme Court affirmed the action of the trial court, it is difficult to determine on which ground plaintiff lost the case. But even assuming, as defendant contends, that *Sellens* stands for the proposition that plaintiff was contributorially negligent as a matter of law in continuing to work in the path of the probable fall of two trees which he had partially felled and which he had rocked back and forth about two feet in an effort to push over, *Sellens* is nonetheless distinguishable on its facts. *Kraus v. Auxvasse Stone & Gravel Co.,* 444 S.W.2d 434 (Mo.1969), where the court discussed the negligence of a plaintiff who walked under the arc of a boom supporting a steel beam, is also distinguishable. Here, Mr. Ogden was to the northwest of the base of the tree while the upper part extended down from the leaning trunk to the east. He was not directly under the limb or in the path of the probable fall of the object as were plaintiffs in *Sellens* and *Kraus.* Had plaintiff known that defendant was pulling the rope taut in line with where plaintiff was working, these cases and *Phillips v. Wirthman,* 516 S.W.2d 543, 545[1] (Mo.App. 1974) would be more in point. In *Phillips* plaintiff was held contributorially negligent as a matter of law when she ran into the path of a chained-up dog she knew to be dangerous. Here, although Mr. Ogden knew that when he cut into the base it would begin to move and the tree would fall down, and that such an operation would have a tendency to be dangerous, there is no showing that he knew or should have known that the limb would fall the way it did. The danger caused by defendant's pulling the rope in the direction of plaintiff was not known to plaintiff and we cannot say under the facts of this case that plaintiff's cutting the base of the tree was contributory negligence as a matter of law. Plaintiff Ogden was not required to anticipate the negligence of this defendant or to anticipate the danger that would not have

# 24

existed except for defendant's negligence. *Holt v. Myers*, 494 S.W.2d 430, 442[14] (Mo. App.1973). *Penberthy v. Penberthy, supra*, 505 S.W.2d at 127[9] supports our decision. In that case the court held that even though plaintiff was aware of the nature of the brushpile and had taken no steps to secure himself on it other than by holding onto limbs as the defendant sawed them, since plaintiff could not see that defendant was behaving negligently in cutting into a limb without first securing his position, plaintiff's contributory negligence, if any, was a question for the jury.

The final issue in this case concerns the trial court's action in granting a new trial on the ground that the verdict was against the weight of the evidence. Trial courts have discretion to grant one new trial on the ground that the verdict is against the weight of the evidence and this will not be disturbed on appeal where there is evidence to support a verdict for the party receiving the new trial. Rule 78.02; *Clark v. Ford*, 498 S.W.2d 803, 805[1] (Mo. 1973). *See Benson v. Qualls*, 527 S.W.2d 44 (Mo.App.1975). In this case there was substantial evidence, such as the testimony of Gilburt Butler on the issue of proximate cause and contributory negligence, that would have supported a verdict for defendant.

The trial court's order in setting aside the verdict for plaintiffs and entering judgment for defendant is reversed. The alternative order granting defendant's motion for a new trial is affirmed.

McMILLIAN and KELLY, JJ., concur.