[No. 34604. Department Two. December 26, 1958.]

EVELYN M. CHRISTENSEN, *Respondent*, v. ROBERT GENSMAN *et al., Appellants*.[1]

MALLERY, J., dissents.

*Wayne D. Purcell, Studley & Purcell,* and *John F. Mc-Carthy (Warren Hastings, H. H. Phillips,* and *Phillips,*

[1]Reported in 333 P. (2d) 658.

*Coughlin, Buell & Phillips*, of counsel), for appellant Columbia River Paper Mills.

*Charles B. Welsh*, for appellants Gensman *et al.*

*Fred M. Bond* and *James E. Duree*, for respondent.

*The Attorney General, E. P. Donnelly* and *H. T. Hartinger, Assistants*, for respondent state of Washington.

WEAVER, J.—Plaintiff filed this action November 6, 1950. Trial commenced March 12, 1953, on the issues raised by the fourth amended complaint; the trial adjourned and convened at intervals during the next four years. Finally, October 11, 1957, the trial court entered a decree and judgment from which defendants Robert and Sylvia Gensman and the Columbia River Paper Mills appeal separately.

In general, plaintiff's action is based on a claim that the several defendants entered upon certain lands and waters in Pacific county constituting the south half of the Wallicut river and the uplands adjacent thereto that are owned by plaintiff; that they committed acts classified by her as trespass, nuisance, and negligent destruction of her property.

Specifically, plaintiff claims that defendants dredged the Wallicut river channel and dumped the debris on her property; that they installed and operated a log dump on the north bank; that they boomed logs in the river in such a manner that virgin soil was cut from the south bank, plaintiff's dikes and tide gates were injured, and plaintiff's land was flooded with salt water, thus destroying the productivity of the soil. She prays for injunctive relief and money damages.

The Wallicut river flows westerly into Baker Bay. The Stringtown bridge crosses the river twenty-five hundred to three thousand feet from its mouth. For a number of years, Diking District No. 1 of Pacific county has maintained a dike and a large tide gate across the river and under the bridge. From several maps in evidence, it appears that the main channel of the river follows the north bank; that the river is forty to fifty feet wide at the Stringtown bridge, and, as it flows west to its confluence with Baker Bay, it varies in

width from one to two hundred feet. The mouth of the river is approximately three thousand feet wide.

Plaintiff's land is in two parcels. One is south of the river and east of the Stringtown bridge—inland from the large tide gate; the other is south of the river, west of the Stringtown bridge, and extends from the bridge to Baker Bay. Plaintiff maintains a series of private dikes along the south side of the river from the bridge to the bay. The dikes contain four tide gates, spaced about four hundred feet apart. Between the river channel and plaintiff's dikes is a mud flat.

It is uncontroverted that the river is affected by the tide. The mean tidal rise is 7.5 feet above mean lower low water. At high tide, water covers the mud flat and reaches plaintiff's dikes and tide gates as well as the tide gate beneath the Stringtown bridge.

A tide gate is opened and closed by water pressure. When the tide is high, pressure closes the gate and prevents sea water from flowing on the land behind the dike; when the tide recedes, the gate is released and any water behind the dike flows to the river.

Plaintiff, by mesne conveyances stemming from a United States patent issued December 2, 1865, claims title (a) to certain uplands (which are not in dispute), and (b) to

" . . . the southerly one-half of the bed of the Wallicut River west of said Stringtown Road to the mouth of the Wallicut River."

In the fall of 1950, defendant Gensman secured a five-year lease from the state of Washington, which, in so far as it applies to the instant action, leased to him

"The Tidelands owned by the State of Washington, on the *southerly side of the Wallicut River situate in front of, adjacent to or abutting upon* the West 23.96 chains of Section 26, and that portion of the J. E. Pickernell Donation Land Claim in Section 27, all in Township 10 North, Range 11 West, W.M., with a frontage of 35.40 lineal chains, more or less." (Italics ours.)

(The land claimed by plaintiff is also in sections 26 and 27.)

At the same time, Mr. Gensman secured permission of the United States corps of engineers to dredge the Wallicut river and construct a log dump and booming grounds "beginning 375 feet downstream from the tidegate at the county road crossing [Stringtown bridge]," as well as a lease of the uplands adjoining the north side of the river. By a transaction that need not be described, the log dump and leases became the property of defendant Columbia River Paper Mills.

In her fourth amended complaint, plaintiff refers to the Gensman lease from the state and alleges

"That the State of Washington does not have any interest in said property, does not own the same, does not have any right or authority or privilege to grant to said defendants or any of them any right, permit or privilege to do the acts mentioned herein . . ."

The transcript of the record on appeal does not contain the state's responsive pleading, therefore we are unable to determine the exact legal description of the tide lands claimed by the state, except as this description *may* be contained in the Gensman lease (quoted *supra*) or in the judgment of the trial court (quoted *infra*).

October 11, 1957, the trial court entered judgment that (a) granted plaintiff judgment against defendants Gensman and Columbia River Paper Mills for $14,312 damages and (b) provided that

". . . the State of Washington is the owner of the description covering the bed of the stream of Wallicut river from Stringtown road down to the mouth of said river, together with all the tidelands below ordinary high tide, the same to be free and clear from any and all claims whatsoever, except the lease which has been given to the defendants."

Defendants gave timely notice of appeal from the money portion of the judgment against them.

November 13, 1957, plaintiff gave "notice of cross appeal" from that portion of the judgment of October 11, 1957, which determined that the state owned the bed of the stream of

the Wallicut river and all tide lands below ordinary high tide.

The state moved to dismiss plaintiff's cross-appeal because Rule on Appeal 33 (3), 34A Wn. (2d) 33, as amended, effective March 1, 1957, does not authorize a cross-appeal against a party who is not an appellant; and, being filed thirty-three days after entry of judgment, it was not timely filed as an original appeal.

In oral argument before this court, plaintiff's counsel conceded the merit of the state's motion to dismiss the cross-appeal; hence, that portion of the judgment that determines state ownership of the bed of the stream of the Wallicut river and all tide lands below ordinary high tide, between the Stringtown bridge and the mouth of the river, is final.

■ There is substantial evidence in the record, both oral and demonstrative, to support the trial court's findings that the river was dredged; that debris was dumped on the south bank of the river; that a portion of the south bank has been cut away; that logs were boomed; that tide gates were damaged; that salt water entered tide gates and inundated land behind damaged dikes; that these acts, which caused damage, were done by defendants at various times. It is inherent in the court's findings that Mr. Gensman acted on behalf of the Columbia River Paper Mills in the fall of 1950 and until he terminated his association with the operation in 1951. We cannot disturb these findings of fact.

■ There is, however, one basic and fundamental defect in the record before us that forces us to conclude that the findings of fact do not support the conclusions of law. The findings of fact do not determine the line of "ordinary high tide" on the south side of the river. The state owns the tide lands north of the line; the plaintiff owns the property south of the line. (It is possible that a competent engineer might determine, from the many maps in evidence, the legal description of this line and apply it to the land in question; but making this determination is not the function of an appellate court.)

■ Plaintiff is not entitled to damages for acts of defendants that occurred on land owned by the state; she is entitled

to damages only if those acts damaged property owned by her. We cannot subscribe to plaintiff's argument that "the trial court must have seen all those things, having viewed the premises, *and must have held the damage was done to the plaintiff's property*" (Italics ours.), for to do so would deny to defendants appellate review of those acts upon which defendants' liability, if any, rests.

■ The trial judge may view the premises for the purpose of clarifying and harmonizing testimony. In other words, his view of the premises is to aid him in his understanding of the evidence introduced in the case. *In re Schmitz*, 44 Wn. (2d) 429, 433, 268 P. (2d) 436 (1954); *Booten v. Peterson*, 47 Wn. (2d) 565, 569, 288 P. (2d) 1084 (1955); *In re Seattle*, 49 Wn. (2d) 247, 253, 299 P. (2d) 843 (1956).

■ In this jurisdiction, the trial judge cannot view the premises for the purpose of proving some *res gestae* fact not in evidence, nor may he view the premises for the purpose of searching for extrinsic evidence to be applied in corroborating or discrediting the testimony of a witness. If he does so, and his judgment is based thereon, it is reversible error. *Elston v. McGlauflin*, 79 Wash. 355, 140 Pac. 396 (1914).

The money judgment against defendants is reversed. The case is remanded for a new trial, limited to a determination of (1) the line of ordinary high tide on the south side of the Wallicut river in order to determine the north boundary of plaintiff's property; and (2) the amount of damages, if any, to plaintiff's property resulting from defendants' actions.

Costs will abide the final disposition of the case.

It is so ordered.

HILL, C. J., DONWORTH, and FOSTER, JJ., concur.

MALLERY, J., dissents.