**Irene B. PAYSON**

v.

**BOMBARDIER, LTD.**

Supreme Judicial Court of Maine.

Argued Sept. 21, 1981.

Decided Oct. 8, 1981.

**412**

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, Joseph M. Cloutier (orally), Frederick M. Newcomb, III, Curtis M. Payson, Rockland, for plaintiff.

Petruccelli, Cohen, Erler & Cox, Gerald F. Petruccelli (orally), Norman & Hanson, David C. Norman, Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, CARTER and VIOLETTE, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

In this wrongful death action tried in Superior Court, Knox County, the jury returned a special verdict that defendant Bombardier, Ltd.,[1] was not guilty of negligence in the manufacture of the snowmobile involved in the death of plaintiff's decedent. On plaintiff's appeal from the resulting judgment in Bombardier's favor, she alleges error in the trial court's exclusion of three items of proffered testimony, its admission of one item of defendant's evidence, and its instruction on proximate cause. Finding no reversible error, we affirm the judgment.[2]

Plaintiff's decedent, Grevis Payson, was a spectator at snowmobile races sponsored by the Rockland Jaycees on February 8, 1969. One of the contestants, Barbara Billings,[3] was operating a nearly new snowmobile manufactured by defendant Bombardier. Mrs. Billings lost control of her snowmobile during one of the races and it veered off the track, rolled over on her, and came to a stop. As a result of the accident, the handlebar of the machine was broken off, but the engine was still running. She then guided the snowmobile away from the race, but it somehow escaped her control and took off into the crowd, killing Grevis Payson instantly upon impact. From the evidence the jury could have found that the machine stalled while Mrs. Billings was moving it off the track; that she placed the broken handlebar on the seat; and that when she then pulled the starter cord the machine ran away from her because the throttle cable attached to the handlebar had become fully extended when she put the handle on the seat.

Plaintiff brought suit against Bombardier, alleging that defendant had negligently designed the steering mechanism of Mrs. Billing's snowmobile and therefore had caused Grevis Payson's death. Plaintiff claimed that the handlebars could not sustain a normal amount of stress and were likely to snap off. Defendant argued that the handlebars were properly designed and that the abnormal stress of the accident had caused them to break. The jury, in a special verdict form, found that Bombardier was not guilty of any negligence. Plaintiff brings this timely appeal.

---

1. In this action plaintiff also sued the Rockland Jaycees. The jury found the Jaycees to be liable to plaintiff and the parties subsequently settled that claim out of court.

2. Since we uphold the special verdict of no negligence on the part of Bombardier, we find it unnecessary to address defendant's cross-appeal, by which it alternatively seeks judgment on the pleadings on the authority of *Burke v. Hamilton Beach Division*, Me., 424 A.2d 145 (1981), and *Hurd v. Hurd*, Me., 423 A.2d 960 (1981).

3. Before trial plaintiff dismissed the complaint as against Mrs. Billings.

## I. Absence of Similar Happenings

■ Plaintiff claims that the testimony of one of defendant Bombardier's witnesses, Mr. Price, was irrelevant hearsay and therefore improperly admitted. Price testified that Bombardier had not received any reports, other than plaintiff's, of handlebar fatigue failure over a period of four years (1969–73) during which Price was in charge of compiling "product information reports" filed by dealers and distributors. He also stated that more than 191,000 snowmobiles of the Billings model have been sold since production began, and the same handlebar design has been used on over 800,000 machines. To the best of his knowledge the case at bar involves, he testified, the only claim of a fatigue failure of this handlebar design.

■ Price's testimony was clearly probative and therefore relevant on the issues of a defective condition, notice thereof, or causation. *Simon v. Town of Kennebunkport*, Me., 417 A.2d 982, 985 (1980). However, defendant was obligated to show substantial similarity of conditions at the time of the other happenings before the evidence could be properly admitted. Once the foundational requirements have been met, admission of the evidence is improper only if it constitutes an abuse of discretion. *Id.*

Dean McCormick states that "specific proof [of similarity of conditions] should not be required when the experience sought to be proved is so extensive as to justify the inference that it included an adequate number of situations like the one in suit." *McCormick's Handbook on the Law of Evidence*, § 200 at 476 (E. Cleary ed. 2d ed. 1972); *see, e. g., Stark v. Allis-Chalmers and Northwest Roads, Inc.*, 2 Wash.App. 399, 467 P.2d 854 (1970) (evidence that no prior accident similar to plaintiff's had occurred involving any of the more than 10,-000 tractors held admissible). The present case is a classic example of the suits to which McCormick was referring. Under these circumstances, admission of the evidence was not error.

■ Under M.R.Evid. 801(c) Price's testimony was clearly hearsay when offered, as it was, to prove the truth of the matter asserted, namely, that no fatigue failure in handlebars such as those of the Billings machine had been reported by Bombardier dealers and distributors, despite the use of the same design on some 800,000 sets of snowmobile handlebars. However, by his testimony Price established that the information he was reporting came from a data compilation maintained in the regular course of business of Bombardier for design and other purposes. As such, it falls within the exception to the hearsay rule stated in M.R.Evid. 803(7): absence of entry in records of regularly conducted business. Therefore, the evidence was correctly admitted by the presiding justice.

## II. Rebuttal Evidence

At trial, after defendant Bombardier rested, the presiding justice in a chambers conference with counsel ruled that testimony on three separate subjects that plaintiff proposed to put on in alleged rebuttal to defendant's witnesses would not be permitted. We reject plaintiff's contention on appeal that the justice erred in excluding all attempted rebuttal testimony.

■ This court has defined rebuttal evidence as evidence which contravenes, antagonizes, confutes, or controls "the inference sought to be drawn by new facts introduced by the adverse party at the next previous stage." *Emery v. Fisher*, 128 Me. 124, 125, 145 A. 747 (1929). While there is no general discretion in the trial judge to exclude what is truly rebuttal testimony, *Hill v. Finnemore*, 132 Me. 459, 172 A. 826 (1934), an appellate court will pay considerable deference to the judge's determination of what constitutes proper rebuttal, taking into account the fact that he alone has the opportunity to assess the evidence with the benefit of having heard the testimony sought to be rebutted and of observing the way it went in before the jury. Furthermore, even as to evidence that is true rebuttal and thus admissible, M.R.Evid. 403 always invests the trial judge with the au-

thority to exclude that otherwise admissible evidence upon a balancing of various negative factors, such as confusion of the jury and undue delay, against the probative value of the proffered rebuttal.

■ First, plaintiff sought to bring forth evidence of other fatigue failures as alleged rebuttal to Mr. Price's testimony that Bombardier had never received notice of any fatigue failures other than the one in this case. After plaintiff's counsel stated that he had "evidence of a fatigue failure in a similar handlebar," the court asked him: "Are you going to put an expert on . . . that says he examined another machine and saw what he considered to be fatigue failure?" Counsel for plaintiff responded: "Absolutely. I will have him testify that he knows the history of this machine and that it was a fatigue failure. It had never been in an accident." The presiding justice correctly and pointedly distinguished true rebuttal evidence, such as testimony that Bombardier had in fact received reports of fatigue failure, from the evidence offered by plaintiff's counsel. Plaintiff's attorney never made clear to the court that he sought to do anything more than to get into the specific circumstances of an alleged failure on another machine. Although at another point counsel referred to "other fatigue failures" in the plural, the presiding justice was justified in excluding the evidence on the basis of M.R.Evid. 403, namely, that any probative value was far outweighed by the confusion and waste of time that would result.

■ Second, plaintiff assigns as error the exclusion of evidence showing that breaks on Bombardier's handlebars could commonly be repaired by welding the broken assembly back together. Plaintiff's counsel wanted to introduce this evidence as a foundation for arguing to the jury a possible explanation why no other handlebar failures had been reported to Bombardier. However, one witness had already testified that welding was used to repair the handlebar assembly on the Billings machine. Thus, the proffered evidence, even if appropriate rebuttal, would have been cumula-

tive. Where the rebuttal evidence is cumulative, the judge in his discretion may exclude it. *Pillsbury v. Kesslen Shoe Co.*, 134 Me. 504, 188 A. 726 (1936); M.R.Evid. 403.

Third, plaintiff complains of being denied the opportunity of putting her expert back on the stand to comment upon the testimony of defendant's expert. That attempted rebuttal sought to drive home that plaintiff's counsel had already established on cross-examination of defendant's expert, Dr. Rapperport, namely, that some of his calculations might be subject to error because they used a solid bar rather than a hollow bar. Since the proffered testimony was cumulative, the court below could, in the appropriate exercise of its Rule 403 discretion, exclude further expert testimony.

### III. Instructions

■ Plaintiff finally asserts that the jury charge, even when read as a whole, *Towle v. Aube*, Me., 310 A.2d 259, 266 (1973), misled the jury into believing that Bombardier if negligent would nonetheless be liable only if its negligence was the sole proximate cause of the resulting injury. We do not need to decide whether plaintiff is correct in that reading of the instructions, because the error she claims to have existed was in any event harmless. The jury found specially that there was no negligence at all on the part of Bombardier and thus the jury never reached the question of causation. The jury never had any reason to consider whether any fault on Bombardier's part was either *the* proximate cause or *a* proximate cause of Mr. Payson's death.

The entry must be:

Judgment affirmed.

All concurring.