Patricia Leah McJUNKINS and Steven McJunkins, Plaintiffs–Respondents–Cross–Appellants,

v.

WINDHAM POWER LIFTS, INC., Defendant–Appellant–Cross–Respondent,

and

E.A. Martin Machinery Company, Defendant–Respondent–Cross–Respondent.

Nos. 15482, 15496.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 27, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 21, 1989.

Application to Transfer Denied April 18, 1989.

B.H. Clampett, M. Douglas Harpool, Timothy E. Gammon, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Larry Bratvold, Springfield, for plaintiffs-respondents-cross-appellants.

Jeffrey H. Harrison, David A. Geisler, William C. Love, Harrison, Tucker, Geisler & Hyde, Springfield, for defendant-appellant-cross-respondent.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendant-respondent-cross-respondent.

PREWITT, Presiding Judge.

Plaintiffs sought damages, based on strict liability in tort, against the manufacturer and seller of a forklift for bodily injuries to plaintiff Patricia Leah McJunkins. A jury returned a verdict in favor of defendants. Plaintiffs then filed a motion for a new trial as to both defendants. On November 3, 1987, the trial court overruled the motion as to defendant E.A. Martin Machinery Company but ordered a new trial on plaintiffs' claim against defendant Windham Power Lifts, Inc. On November 10, 1987, Windham filed a notice of appeal from the order granting a new trial and on November 17, 1987, plaintiffs filed a "Notice of Cross–Appeal". Thereafter, respondent E.A. Martin Machinery Company filed a motion to dismiss plaintiffs' appeal on the ground that it could not be a cross-appeal as to Martin since Martin did not initially appeal. That motion, taken with the case, is now denied for the reasons hereafter set out.

Rule 81.04 provides when and how appeals may be taken. It states in part:

"**(b) Cross Appeals.** If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date the first notice of appeal was filed."

This rule is very similar to Rule 4(a)(3) of the Federal Rules of Appellate Procedure which states:

(3) If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

When a Missouri rule is practically the same as a federal rule, it is appropriate to use federal precedents as a guide to the application of the Missouri rule. *Kingsley v. Burack*, 536 S.W.2d 7, 11 (Mo. banc 1976). See also *State ex rel. Kincannon v. Schoenlaub*, 521 S.W.2d 391, 394 (Mo. banc 1975) (although not controlling, federal decisions construing rules similar to Missouri rules should be considered).

Martin contends that the rule "contemplates the prior filing of a timely notice of appeal by the party against whom the cross appeal is taken." Literally the rule allows "any other party" to appeal within ten days from the date a party files the first notice of appeal. There is no requirement that the party against whom the latter appeal is directed be the party filing the initial notice of appeal. The rule does not so limit the second appealing party and is not to be applied in such a narrow manner. See *Jackson Jordan, Inc. v. Plasser American Corp.*, 725 F.2d 1373 (Fed.Cir.1984) and authorities there discussed.

The cases from other jurisdictions relied on by Martin, *Maxwell v. Aetna Life Ins. Co.*, 128 Ariz. 350, 625 P.2d 939 (App.1981); *Fisher v. Mission Viejo Co.*, 148 Ariz. 357, 714 P.2d 850 (App.1985); *Johnson v. Tri-Union Oil & Gas Co.*, 278 Ky. 633, 129 S.W.2d 111 (App.1939), and *Christensen v. Gensman*, 53 Wash.2d 313, 333 P.2d 658 (1958), are not persuasive. They are from states with rules significantly different than the Missouri rule in question. Plaintiffs were entitled to appeal within ten days after any party filed a notice of appeal.

Plaintiff Patricia Leah McJunkins received serious injuries when she was struck by the forklift. She had left the building where she was employed to have lunch with her husband in his pickup and was returning to work when she was struck while crossing a roadway. Plaintiffs claim that the forklift was improperly designed because the design impaired the visibility of the operator as his vision was obstructed by the center hydraulic cylinder. Plaintiffs also offered evidence that the design was defective because it did not provide for certain safety features including amber beacon lights, a horn, an automatic high pitch pulsating pedestrian alarm and outboard mirrors to extend visibility. At the time Patricia McJunkins was struck, the forklift was being operated by Larry Newton and Denzil Matney was riding upon it as part of his training to operate it. Other evidence will be mentioned in discussing the parties' contentions.

The first point we discuss is the contention of plaintiffs that they are entitled to a new trial against both defendants because evidence was admitted that the forklift had not been involved in any accidents either before or after it struck Patricia McJunkins.[1] Both defendants urged the trial court to admit this evidence. Larry Newton, the driver of the forklift testified that he had not struck any other pedestrians with it. Denzil Matney, the passenger on the forklift, testified that he had not hit anyone when he drove it. Plaintiff's expert was asked during cross-examination if he saw anyone run over by the forklift when he visited the scene of the collision. Reference to the lack of other accidents was mentioned by both defendants in their opening statements and closing arguments.

During Newton's testimony, the initial attempt to admit the evidence, timely objections were made by plaintiffs, but not later. However, once a "timely and sufficient objection has been squarely made, it is not necessary to follow up with repeated objections in order to preserve the point." *Chester v. Shockley*, 304 S.W.2d 831, 835 (Mo.App.1957).

The briefs of the parties confine their authorities on this issue to Missouri cases. Unfortunately, those cases give little guidance. They indicate that although the general rule is that proof of the absence of other accidents is not admissible because it raises collateral issues which have a tendency to confuse and mislead the jury, there is no "absolute rule" and much is left to

---

1. The parties and the authorities hereafter discussed apparently use "accident" in its colloquial sense and as not excluding negligence, fault or misconduct. See Black's Law Dictionary 30–31 (4th ed. 1968). We also use it in that sense.

the discretion of the trial court. *Welkener v. Kirkwood Drug Store Co.*, 734 S.W.2d 233, 244–245 (Mo.App.1987); *Siebern v. Missouri–Illinois Tractor & Equipment Co.*, 711 S.W.2d 935, 940–941 (Mo.App. 1986).

*Welkener* upheld the denial of evidence of any prior accidents involving crutches manufactured by the third-party defendant. *Siebern* upheld the trial court allowing evidence that a certain model of a front end coal loader had not been involved in any other roll overs or fatalities. The defendants' theory was that the coal loader could not roll over and the court held that this evidence "tends to support defendants' theory that the non-occurrence of roll over proves impossibility of roll over. Hence, absence of defect. The evidence is secondary to expert opinion that the dozer could not roll over." 711 S.W.2d at 941. The court determined that such evidence neither raised a collateral issue nor would confuse the jury and was relevant because if accepted by the jury the evidence "affirmatively proves safe design." Id.

In *Kraus v. Auxvasse Stone & Gravel Company*, 444 S.W.2d 434, 436–437 (Mo. 1969), a negligence action, a man was injured when a beam being hoisted so that it could be lowered vertically, slipped from a cable and struck him. It was held that evidence that for over a two-month period hundreds of beams had been so lifted and had not dropped, "was not entirely irrelevant, it may have related however to a collateral matter and in the circumstances of this case was not so manifestly inflammatory or prejudicial as to demand the granting of a new trial by this court." 444 S.W.2d at 437. No abuse of discretion was found in the trial court allowing an employee of the defendant to testify that there had been no other fires from a failure in the model of a television set in question. *Riney v. Zenith Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App.1984). See also *Dill v. Dallas County Farmers' Exchange No. 177*, 267 S.W.2d 677, 681 (Mo.1954) ("testimony that no other invitee had ever fallen in defendant's store would tend to confuse the issues and would not reasonably tend to show the floor was not reasonably safe when plaintiff fell.").

According to *McCormick* the recent trend is toward admissibility of proof of the absence of other accidents to show:

> (1) absence of the defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger.

McCormick on Evidence, § 200, pp. 591–592 (3d ed. 1984).[2]

---

**2.** In discussing admissibility of other accident evidence *McCormick* also states:

> One might think that if proof of similar accidents is admissible in the judge's discretion to show that a particular condition or defect exists, or that the injury sued for was caused in a certain way, or that a situation is dangerous, or that defendant knew or should have known of the danger, then evidence of the absence of accidents during a period of similar exposure and experience likewise would be receivable to show that these facts do not exist in the case at bar. Indeed, it would seem perverse to tell a jury that one or two persons besides the plaintiff tripped on defendant's stairwell while withholding from them the further information that another thousand persons descended the same stairs without incident.
>
> Yet, many decisions lay down just such a general rule against proof of absence of other accidents. In some cases, excluding such proof of safety may be justified on the ground that the persons passing in safety were not exposed to the same conditions as those that prevailed when the plaintiff's injury occurred. The evidence of a thousand safe descents down the stairs would be far less convincing if it were revealed that all of these were made in daylight, while the two or three accidents occurred at night in poor lighting. However, the possibility that a very general safety record may obscure the influence of an important factor merely counsels for applying the traditional requirement of substantial similarity to evidence of the absence as well as the presence of other accidents. When the experience sought to be proved is so extensive as to be sure to include an adequate number of similar situations, the similarity requirement should be considered satisfied.
>
> Neither can the broad proscription be justified by the other considerations that affect the admissibility of evidence. The problems of prejudice and distraction over "collateral issues" seem much more acute when it comes to proof of other accidents than when evidence of an accident-free history is proffered.

A line of cases reflecting this trend include *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373 (6th Cir. 1983); *Jones v. Pak–Mor Mfg.*, 145 Ariz. 121, 700 P.2d 819, cert. denied, 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985); *Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 724 P.2d 612 (App.1986); *Schaffner v. Chicago & North Western Tr.*, 161 Ill.App.3d 742, 113 Ill.Dec. 489, 515 N.E.2d 298 (1987); *Salvi v. Montgomery Ward & Co.*, 140 Ill.App.3d 896, 95 Ill.Dec. 173, 489 N.E.2d 394 (1986); *Leischner v. Deere & Co.*, 127 Ill.App.3d 175, 82 Ill.Dec. 120, 468 N.E.2d 182 (1984); *Foster v. Marshall*, 341 So.2d 1354 (La.App.1977); *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144 (Me. 1983); *Payson v. Bombardier, Ltd.*, 435 A.2d 411 (Me.1981); *Belfry v. Anthony Pools, Inc.*, 80 Mich.App. 118, 262 N.W.2d 909 (1977); *Herman v. Midland Ag Serv.*, 200 Neb. 356, 264 N.W.2d 161 (1978); *Reiger v. Toby Enterprises*, 45 Or.App. 679, 609 P.2d 402 (1980); *Stark v. Allis–Chalmers and Northwest Roads, Inc.*, 2 Wash.App. 399, 467 P.2d 854 (1970); and *Caldwell v. Yamaha Motor Co.*, 648 P.2d 519 (Wyo. 1982).

In *Jones v. Pak–Mor Mfg., supra,* Arizona departed from its rule absolutely excluding evidence of prior accidents, noting that few recent decisions have applied such an absolute rule. 700 P.2d at 822. The court said that one of the factors which may bear upon whether a product was defective and unreasonably dangerous in a defective design case is whether the product as designed will cause serious injury:

> Thus, in product liability actions based on defective design, relevant issues may include whether defendant should have foreseen the potential for danger from use of the product as designed, whether a defect existed, and whether a particular danger was unreasonable—including the likelihood of its causing serious injury. Safety-history, including the presence or absence of prior accidents under

> similar use, is evidence which may make these ultimate facts "more probable or less probable than [they] would be without the evidence."

700 P.2d at 823.

The court determined that if there was a proper foundation such evidence should be admitted but that the "foundation should include evidence that the product experience which the proponent seeks to prove 'is so extensive as to be sure to include an adequate number of similar situations'". 700 P.2d at 825. The court also noted in *Jones* that "if the import of the evidence is no more than testimony that no lawsuits have been filed, no claims have been made, or 'we have never heard of any accidents,' the trial judge generally should refuse the offered evidence since it has very little probative value and carries much danger of prejudice." Id.

*Foster v. Marshall*, supra, states the Louisiana rule to be that "where defective design is alleged, as distinguished from … defective manufacture … the history of accidents is relevant and has probative value in showing whether the design … is unreasonably dangerous." 341 So.2d at 1361.

In *Stanley*, supra, the Maine approach was stated to be "that evidence of absence of similar accidents is relevant on the issues of defective condition, notice, or causation as long as the foundational requirement of substantial similarity of conditions or of an adequate number of situations are met." 462 A.2d at 1149. The Maine rule as explained in *Payson*, quoting from *McCormick*, indicates that specific proof that conditions are similar should not be required when the experience shown is so extensive as to justify the inference that it included an adequate number of situations like the one in suit. 435 A.2d at 413.[3] In Illinois evidence of the absence of prior accidents is admissible where the offering party establishes that the absence occurred

---

Indeed, the defendant will seldom open this door if there is any practical likelihood that the plaintiff will dispute the safety record. McCormick on Evidence, § 200, pp. 590–591 (3d ed. 1984).

**3.** The portion of *McCormick* quoted in *Payson* is from an earlier edition but essentially is included in the quote in footnote 2 supra.

where the same product was used under conditions substantially similar to those faced by plaintiff in the pending suit. *Schaffner*, supra, 113 Ill.Dec. at 500, 515 N.E.2d at 309.

■ We conclude that evidence of absence of other accidents is relevant in a case claiming defective design of a product if it is shown that the absence occurred when the product was used under conditions substantially similar to those faced by plaintiff and an adequate number of those situations had occurred to make the absence meaningful. Admitting evidence of the absence of other accidents without such a foundation could present evidence to a jury that was irrelevant to the case before it. Whether the foundation is adequately shown is primarily within the discretion of the trial court. This holding is consistent with the results reached in previous Missouri cases. As the foundation was not established before the evidence here was admitted, the evidence of the absence of prior accidents was not admissible.[4]

Defendants do not contend that this evidence was not prejudicial. Their reliance on it throughout the trial indicates that they thought it persuasive. We determine that it was prejudicially erroneous by improperly raising a collateral issue that may have misled or confused the jury. Because of this, plaintiffs are entitled to a new trial against both defendants. If upon retrial the trial judge is satisfied that an adequate foundation was shown evidence regarding the absence of other accidents may be admissible.

■ Before remanding for a new trial as to defendant E.A. Martin Machinery Co., we have also considered its contention that plaintiffs failed to make a submissible case against it "in that plaintiffs failed to prove that the forklift was in a defective condition when it left Respondent's [E.A. Martin Machinery Co.] hands". This was considered because trial errors usually become immaterial and do not call for reversal of a judgment in favor of a defendant where

the plaintiff fails to make a submissible case. *Reed v. Sale Memorial Hospital and Clinic*, 698 S.W.2d 931, 933 (Mo.App. 1985); *Stephens v. Great Southern Savings & Loan Association*, 421 S.W.2d 332, 334 (Mo.App.1967).

In their reply brief "[p]laintiffs concede they had the duty to show by either direct or circumstantial evidence the forklift was defective when it left the hands of Defendant Martin." See *Williams v. Nuckolls*, 644 S.W.2d 670, 674 (Mo.App.1982). In reviewing to determine if a submissible case was made, the evidence and reasonable inferences therefrom are viewed most favorable to plaintiffs. *Ogle v. Webb*, 623 S.W. 2d 582, 583–584 (Mo.App.1981).

There was evidence that the forklift was manufactured in 1974 and then sold to Kerr–McGee Chemical Co. It was then traded to defendant E.A. Martin Machinery Co. and sold by Martin in 1977 to MansSteel. At the time it struck Patricia Leah McJunkins, it was being operated by an employee of MansSteel Corp. The forklift operator testified that there were blind spots caused by the center mast of the forklift such that he had to continually move his head from left to right in order to see in front of him. There also was testimony of expert witnesses that the mast of the forklift impaired the visibility of its operator. Expert witnesses testified for the plaintiffs that that forklift was defectively designed due to this visibility impairment and its lack of warning devices. The inference, and perhaps the assumption of all the participants at the trial, was that it had been manufactured with this design. MansSteel installed a cab on it but otherwise did not change it. There was evidence indicating that this addition did not change the claimed defects in design.

If the forklift was manufactured with defects and those same defects were present when it struck plaintiff Patricia Leah McJunkins, it is a fair inference that it was that way at the time E.A. Martin Machinery Company sold it to MansSteel.

---

**4.** An attempt to lay a foundation was made before Newton testified that he had not struck any other pedestrians with the forklift but no attempt at a foundation was made with the other two witnesses.

It is unlikely that the machine was changed and was different at the time E.A. Martin Machinery Company sold it and that it was changed back before the collision to what it was at the time of manufacture. That defies logic and human experience. In addition photographic exhibits were identified and described which showed, according to witnesses, the "original machine" and the cab added by MansSteel and how the forklift appeared when it arrived at the MansSteel plant.

The evidence was sufficient to show that the defective design, if such existed, was there at the time E.A. Martin Machinery Co. sold the forklift. This contention is denied. As the other issues raised by the parties may not be the same on retrial, we see no need to comment upon them.

The order awarding plaintiffs a new trial against defendant Windham Power Lifts, Inc. is affirmed. The portion of the judgment in favor of E.A. Martin Machinery Company is reversed and the cause remanded to the trial court for a new trial between plaintiffs and both defendants.

HOGAN and MAUS, JJ., concur.