Willie WATKINS, Plaintiff–Appellant,

v.

The TORO COMPANY and Beckman
Turf and Irrigation Supply, Inc.,
Respondent–Respondent.

No. 64343.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1995.

Leonard P. Cervantes, Frank Carretero, Philip A. Cervantes, Cervantes & Association, St. Louis, for appellant.

Kenneth Bean, Sandberg, Phoenix & von Gontard, St. Louis, Donald W. Vasos, Law Offices of Donald W. Vasos, Kansas City, Kan., for respondent.

KAROHL, Judge.

Plaintiff, Willie Watkins, appeals after judgment on a jury verdict in favor of defendants, The Toro Company (Toro) and Beckman Turf & Irrigation Supply, Inc. (Beckman). Watkins brought a products liability action against Toro, as manufacturer, and Beckman, as retailer, for injuries he sustained while operating a Toro commercial lawn mower. We reverse and remand for a new trial.

On May 28, 1985, Watkins' employer, the State of Missouri, bought a Toro commercial lawn mower from Beckman. The lawn mower was not equipped with "operator presence controls" which would automatically shut off the blade when an operator released the handle. The day after purchase, on May 29, 1985, Watkins used the lawn mower in his capacity as a custodian at Scullin Elementary School in St. Louis. He testified he was mowing on level ground toward the corner of a fence when he slipped on some loose grass clippings. The mower stopped at the fence, but the engine and blade continued to run. His right foot slid under the mower. Two of his toes were amputated. He testified that approximately five seconds elapsed from the time he slipped and fell to the time his foot went under the mower. He also testified he did not knowingly or voluntarily place his foot under the mower.

Gary Friend, a mechanical engineer, testified on Watkins' behalf that the lawn mower was defective and unreasonably dangerous because it lacked operator presence controls. He opined that such controls would have shut off the blade in sufficient time to have prevented the amputation of Watkins' toes. He also testified that equipping commercial lawn mowers with operator presence controls was feasible at the time this mower was manufactured.

Toro and Beckman offered two theories of defense: (1) Watkins was contributorily at fault because he voluntarily and unreasonably encountered the danger of the rotating blade, and (2) operator presence controls would not have stopped the blade fast enough to prevent the injury because the event occurred much quicker than Watkins remembered and, thus, the defect would not have caused the injury.

■ Watkins presents four points on appeal. Watkins contends the trial court erred in submitting MAI 32.23, the contributory fault instruction, because there was no evidence he voluntarily and unreasonably exposed himself to a known danger. He argues that operating the Toro lawn mower in a manner reasonably anticipated is not evidence of contributory fault.

■ Prior to the enactment of § 537.765, effective July 1, 1987, (See, § 537.765 RSMo Cum.Supp.1993), a plaintiff's contributory negligence was not at issue in a products liability case. *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 493 (Mo. banc 1986). It neither defeated nor diminished recovery. A defendant could sometimes make use of the plaintiff's alleged carelessness in support of arguments that the product was not unreasonably dangerous, or that the alleged defects in a product did not cause

the injury, but these were traversing claims not appropriate for instruction. If the defective product was a legal cause of injury, then even a negligent plaintiff could recover. *Id.* However, this did not eliminate giving MAI 32.23 in an appropriate case. *Id.* The contributory fault instruction may be given in a products liability case if there is sufficient evidence plaintiff knowingly exposed himself to a known danger. *Arnold v. Ingersoll–Rand Company,* 834 S.W.2d 192 (Mo. banc 1992).

The court submitted the following instruction over Watkins' objection:

Your verdict must be for defendants if you believe:

First, when the Toro commercial lawn mower was used, plaintiff knew of the danger as submitted in Instructions 6 and 7 and appreciated the danger of its use,

Second, plaintiff voluntarily and unreasonably exposed himself to such danger, and

Third, such conduct directly caused or directly contributed to cause any damage plaintiff may have sustained.

There was insufficient evidence to support the submission of MAI 32.23. Watkins testified he knew that when the lawn mower's engine was running, the blade was turning. He also testified he did not voluntarily put his foot into the area of the blade of the mower, and that he did not knowingly or voluntarily put his foot where the blade was rotating. There was no evidence Watkins misused the lawn mower. Toro offered no evidence Watkins knowingly or voluntarily exposed himself to a known danger. It attempted to prove the lawn mower was safe rather than dangerous. It offered evidence Watkins previously used a similar mower on numerous occasions without injury. Toro's offer of this evidence contravenes its suggestion it was entitled to a contributory fault instruction on the basis Watkins' operation of the mower was exposure to a known danger that caused his injury. Thus, the trial court erred in submitting MAI 32.23.

■ Watkins contends the trial court erred in allowing defendants' experts to testify and offer *substantive* evidence to support a finding that his fall and the entry of his foot into the lawn mower's rotating blade took less than a second and the presence of an automatic shut-off could not have been effective in less time. He argues testimony on time of fall was pure speculation and was not based on adequate facts because the experts were not present at the scene of the accident and did not witness his fall, and there was no other evidence, except Watkins' contrary testimony, to serve as a basis for the opinions.

■ An expert's opinion must be based either upon facts within the expert's knowledge and observations or upon facts supported by competent evidence. *Coppedge v. Missouri Highway and Transportation Commission,* 809 S.W.2d 164, 167 (Mo.App. 1991). We emphasize Toro's expert evidence was not offered merely to oppose the validity of Watkins' testimony. It was offered as proof of how long it took Watkins to fall into the lawn mower.

Lyle C. Fahning, an agricultural engineer, testified for defendants that he disagreed with Watkins' estimation that five seconds elapsed from when he slipped to when he was injured. At trial, the following exchange took place over Watkins' objection:

(Defense counsel): The question was whether or not that estimation of five seconds from the beginning of the slip to the point where he feels that he's injured, whether that's realistic under the circumstances.

(Fahning): Based on my experience and scientific knowledge of falling, I believe that that is much, much longer than the actual accident occurred.

(Defense counsel): Why is that? Upon what factors do you base that opinion?

(Fahning): Based on the fact that—a couple things—one, from my experience in seeing accidents or seeing dead-man controls, actually seeing people slip, I have seen people on hills slip with dead-man controls.

And also from the standpoint of the standards that have been developed, the amount of time that it takes for a person to let go of a handle and walk around the front of the machine is closer to five sec-

onds, which is a long time. It may seem like a long time to Mr. Watkins, and he may feel like it was five seconds, but these things happen very quickly.

And with a basic scientific calculation of how long it takes a person to fall, how much time it takes to drop from a certain height and hit the ground, it's much less than five seconds. And at that point you are in contact, basically, with a blade. So from that standpoint, based on scientific experience and analysis, I would say it would be closer to a second or so.

On cross-examination, Fahning admitted he did not witness Watkins' accident and had never seen the scene of the accident.

Herman P. Christopherson, a senior program manager in engineering for Toro, also testified for defendants. He testified operator presence controls, which stop the blade approximately a second and a half after the operator leaves the operator position, would not have prevented the accident because Watkins' fall happened before the controls would have stopped the blade. He based his opinion on the lawn mower, the hill at the accident site, depositions as to how the accident occurred, and human factors engineering courses. On cross-examination, Christopherson admitted he was not at the scene of the accident and did not see how fast the accident occurred.

We find the trial court erred in allowing defendants' experts to offer substantive proof regarding the timing of Watkins' fall and injury. Neither expert had the benefit of knowledge and observations of the accident or facts supported by competent evidence to support their opinions.

■ Moreover, there is a second reason the court erred. The timing of the fall and injury in this case is not a proper subject for testimony. *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. banc 1967) (point of impact of two automobiles not a proper subject for expert testimony); *Anderson v. Prugh*, 364 Mo. 557, 264 S.W.2d 358 (1954) (possible maximum speed of sled on snow-packed hill not a proper subject for expert testimony where expert was not eyewitness). The subject of the testimony was "how much time did it take for Watkins to fall into the lawn mower?" In the absence of facts to support application of a mathematical or scientific formula, jurors, based on ordinary knowledge, common sense and practical experience gained in the common experiences of life are competent to determine the timing of Watkins' fall and injury. *Housman*, 421 S.W.2d at 292. The trial court erred in allowing substantive expert testimony on the timing of the fall and injury.

We address the following issues raised by Watkins because they could reappear on retrial, not because they necessarily constitute reversible error.

■ In his third point, Watkins contends Toro had a non-delegable duty to manufacture its products without defects. He argues the trial court erred in admitting evidence that the State of Missouri and the St. Louis Board of Education ordered Toro commercial lawn mowers without operator presence controls. Whether or not an employer has a duty to safeguard, the defendant is not as a matter of law absolved of liability. *Duke v. Gulf & Western Manufacturing Co.*, 660 S.W.2d 404, 416 (Mo.App.1983). Thus, evidence that Watkins' employer purchased mowers without operator presence controls is not probative of whether the mowers Toro manufactured are defective.

■ In his fourth point, Watkins contends the trial court erred in allowing Toro and Beckman to introduce evidence that he had used twelve other mower models without operator presence controls without injury. He argues such evidence of no prior complaints or the absence of similar lawn mower accidents is inadmissible to show that the product was safe. Evidence of absence of other accidents is relevant in a case claiming defective design of a product if it is shown that the absence occurred when the product was used under conditions substantially similar to those faced by plaintiff and an adequate number of those situations had occurred to make the absence meaningful. *McJunkins v. Windham Power Lifts, Inc.*, 767 S.W.2d 95, 100 (Mo.App.1989). Admitting evidence of the absence of other accidents without such a foundation could present evidence to a jury that was irrelevant to the case before it.

Whether the foundation is adequately shown is primarily within the discretion of the trial court. *Id.*

The motion to dismiss appeal is denied. Reversed and remanded.

SIMON, J., concurs.

AHRENS, P.J. concurs in result.