**Stephanie HEITMAN and Ronald Heitman, Appellants,**

v.

**HEARTLAND REGIONAL MEDICAL CENTER, Respondent.**

**No. WD 68374.**

Missouri Court of Appeals, Western District.

April 29, 2008.

Steve Hobson, Esq., Kansas City, for Appellants.

Sean McGreevey, Esq., Overland Park, KS, for Respondent.

Before ELLIS, P.J., HARDWICK, J., and DANDURAND, J.

JOSEPH P. DANDURAND, Judge.

Stephanie and Ronald Heitman appeal from the judgment entered on a jury verdict in favor of Heartland Regional Medical Center. The Heitmans sued Heartland for personal injuries Ms. Heitman claims that she sustained when she fell exiting the shower in the bathroom of her hospital room and for loss of consortium. In their sole point on appeal, they claim that the trial court erred in admitting evidence of the absence of prior patient complaints of a defective shower or of falls in the shower. The judgment is affirmed.

## Facts

In their first amended petition for damages, the Heitmans alleged that on the morning of August 11, 2004, after giving birth the previous evening, Ms. Heitman fell on a puddle of water as she stepped out of the shower in her hospital room, Room 110, in the labor and delivery unit of Heartland. They further alleged that Heartland knew or should have known of the condition of the shower and resulting puddle and failed to repair the shower or warn Ms. Heitman of it. Finally, the Heitmans alleged that, as a result of the fall, Ms. Heitman sustained a sacral fracture, herniated disc, left arm bruising, muscle strain, and bruising of her left hip. Heartland denied the Heitmans' allegations.

At trial, the Heitmans presented the testimony of Rachel Scroggins to prove the hospital's knowledge of the defective shower. Ms. Scroggins had been a patient in Room 110 three months earlier and had experienced problems with the shower. Specifically, she noticed that the water pressure was low, the shower "fitting" was broken, and water was spraying out of the side of the shower curtain onto the bathroom floor. Ms. Scroggins stated that as she got out of the shower, she started to slip but caught herself so she didn't fall. She told a nurse about the problems with the shower and the nurse said she would take care of it. Ms. Scroggins explained that she had never met Ms. Heitman and had met Mr. Heitman through work. Mr. Heitman, however, admitted at trial that he had described Ms. Scroggins' boyfriend as a "good friend" of his during his deposition.

In response to Ms. Scroggins' testimony, Heartland introduced two exhibits at trial to show the absence of reports of problems with the shower in Room 110. Exhibit 310 was a list of thirty-three patients who occupied Room 110 between Ms. Scroggins' stay in May 2004 and Ms. Heitman's stay in August 2004. Exhibit 311 was a work order report listing all of the maintenance work orders for the labor and delivery unit including Room 110 from May to August 2004. No work orders for the shower in Room 110 were listed except the one made in response to Ms. Heitman's complaint.

Heartland also offered the testimony of Jennifer Redman to lay a foundation for the introduction of the exhibits. Nurse Redman testified that she has worked as a registered nurse in Heartland's labor and delivery unit for twenty-two years and that she worked in May, June, July, and August 2004. As part of her job, she regularly sees and interacts with the mothers after they give birth. She attends the deliveries, provides some education to the mothers like breastfeeding, and, if the baby remains in the room with the mother, she checks in every hour to take the baby's vitals and make sure everything is okay. The following exchange then occurred on direct examination:

Q: Are you generally aware in your job of whether women on the OB floor take showers or not?

A: Oh, yeah. They take showers daily.

Q: Okay. And would that apply to Room 110, which is the subject of this litigation?

A: All rooms take showers.

Q: And would that be the same from May, June, July, and August 2004?

A: Nothing's changed. Everybody takes showers. That's probably one of the best medications we can offer a newborn mother.

Q: Okay. Have you ever seen a woman leave the hospital without showering after a vaginal delivery?

A: In a very rare instance. Say a baby was transferred to Children's Mercy unexpectedly, a lot of times the mothers, if they're stable, the doctors dismiss them

and they just follow their baby on down to a different hospital.

Q: Based on your experience and the a fact that you were on the floor daily, if there were 33 women in the room, in Room 110 between May 7th and August 11th, about how may in your estimation would have taken showers?

Counsel for the Heitmans objected to the question as calling for speculation, and the trial court overruled the objection. Nurse Redman answered, "All 33 probably more than once." Nurse Redman also testified that she had no recollection of talking to any nurse or the housekeeper about the shower being broken prior to the incident involving Ms. Heitman.

On cross-examination, Nurse Redman testified that she does not work every day of the week and that of the seven day-shift and the six night-shift nurses, only two or three are scheduled to work on any given shift depending on the patient census. She admitted that she did not actually watch any of the patients shower during the period of May through August 2004 but that on a handful of occasions, she found the patient in the shower when she took the baby back to the room. Nurse Redman further admitted that she did not know how long those patients had showered or if they showered long enough for water to build up on the floor. Additionally, she did not know if any of those patients noticed the shower head was defective or any water on the floor when they got out of the shower. She did not know if any of those patients had fallen while exiting the shower. Nurse Redman also testified that she did not go into the rooms to inspect the showers or see how the shower heads were working, that it was possible that patients had slipped in the shower and reported it but that she did not know about the reports because she wasn't there everyday, and that she had never heard about Ms. Scroggins' complaint about the leaking shower head.

Finally, the following exchange occurred on redirect examination:

Q: Just briefly, ma'am. You were talking about a handful, maybe five people that you had seen. Those are the ones that you had actually gone in and personally observed taking a shower; correct?

A: Right. I would knock on the bathroom door looking for the mother and I would crack it open. I would see she was in the shower, so I would just leave the room.

Q: Okay. You're still aware that the vast majority, if not all the women, take showers while they're there on the floor?

Counsel for the Heitmans again objected, and the trial court overruled the objection. Nurse Redman answered, "Oh, yes, they do. They generally take a shower two to three hours after delivery." She added, "Everybody showers."

Pat Violett, a worker in the maintenance department at Heartland, also testified at trial. Mr. Violett received a work order to repair the shower in Room 110 after Ms. Heitman's incident. To assess the problem, Mr. Violett turned on the shower and noticed water running down the hose into the floor of the shower. He did not recall seeing water spray over the shower curtain. Mr. Violett determined that the diaphragm in the vacuum breaker in the shower head had gone bad, and he replaced it. He testified that "[t]he rest of [the shower] was in perfect shape." Mr. Violett also testified that he was not notified of a problem with the shower in Room 110 in May when Ms. Scroggins was a patient at the hospital. He further explained that if a problem with the shower had been reported at that or any other time between May and August 2004, a work order would have been generated.

The jury ultimately returned a verdict in favor of Heartland. This appeal by the Heitmans followed.

## Discussion

In their sole point on appeal, the Heitmans claim that the trial court erred in admitting evidence of the absence of prior patient complaints of a defective shower or of falls in the shower. They contend that Heartland failed to lay a sufficient foundation for the admission of such evidence because none of the witnesses had personal knowledge of or testified to an adequate number of substantially similar occurrences.

The question of the admissibility of evidence of the absence of other similar occurrences with the shower was initially raised and briefed at the beginning of Heartland's case. The Heitmans objected to Defendant's Exhibits 310 and 311 to the extent that Heartland would argue that they showed the lack of any other complaints about the shower. They argued that there was no foundation laid for the admission of the exhibits for that purpose. The trial court agreed, stating that it would not allow such an argument by Heartland without laying a proper foundation—specifically, that the shower was actually used by the women who stayed in Room 110. Heartland then proceeded with its case, including presenting the testimony of Nurse Redman to lay the foundation for introduction of Exhibits 310 and 311. After presentation of its case, Heartland offered into evidence, and the trial court admitted, all of its exhibits, including 310 and 311.

■ Evidence of the absence of prior accidents is relevant to show: (1) absence of a defect or condition; (2) lack of a causal relationship between the injury and the defect or condition charged; (3) nonexistence of an unduly dangerous condition; or (4) lack of knowledge of or grounds to realize the danger. *Henson, Lincoln v. Bd. of Educ. of Wash. Sch. Dist.,* 948 S.W.2d 202, 206 (Mo.App. E.D.1997); *Luthy v. Denny's, Inc.,* 782 S.W.2d 661, 665–66 (Mo.App. W.D.1989); *McJunkins v. Windham Power Lifts, Inc.,* 767 S.W.2d 95, 98 (Mo.App. S.D.1989). "For such evidence to be admissible, the proponent of the evidence must show that 'no accidents occurred ... under conditions substantially similar to those faced by plaintiff and that an adequate number of those situations occurred to make the absence of accidents meaningful.'" *Henson,* 948 S.W.2d at 206 (quoting *Savant v. Lincoln Eng'g,* 899 S.W.2d 120, 122 (Mo.App. E.D. 1995)). Whether a proper foundation is established for the admission of evidence of the absence of prior accidents is primarily within the discretion of the trial court. *Id.* Thus, the trial court's determination will be affirmed on appeal unless an abuse of discretion is shown. *Id.*

■ Heartland laid a proper foundation for the admission of evidence that no other patients complained of, had problems with, or fell in the shower in Room 110 between May and August 2004. Exhibit 310 revealed that thirty-three patients occupied Room 110 between Ms. Scroggins' stay in May 2004 and Ms. Heitman's stay in August 2004. Nurse Redman testified that all of the new mothers who stayed in Room 110 between May and August 2004 used the shower daily. Nurse Redman explained that she has worked in Heartland's labor and delivery unit with the new mothers for twenty-two years and that she specifically worked in May, June, July, and August 2004. As part of her job, she regularly sees and interacts with mothers after they give birth. She is also generally aware that the mothers in the unit, including those in Room 110, showered daily. Specifically, she testified, "Everybody takes showers. That's probably one of the

best medications we can offer a newborn mother." Finally, Mr. Violett, a hospital maintenance worker, testified that if a problem with the shower had been reported between May and August 2004, a work order would have been generated. Exhibit 311 showed that no work orders for the shower in Room 110 were created except the one made in response to Ms. Heitman's complaint. This evidence demonstrated that no complaints of problems with the shower or accidents involving the shower occurred under conditions substantially similar to those faced by Ms. Heitman and that an adequate number of similar situations had occurred to make the absence of prior accidents meaningful. *See Savant,* 899 S.W.2d at 122 (a sufficient foundation was established to admit evidence of absence of other accidents involving hydraulic jack where manager of engineering and service manager testified that accidents and problems with equipment were to be reported to them, that the jack was used daily to lift transmissions in repair shops throughout the country, and no other incidents similar to that of plaintiff's had been reported.)

Furthermore, the evidence of lack of the problems or accidents involving the shower were proper rebuttal evidence to Ms. Scroggins' testimony, which was presented to prove that Heartland had knowledge of the defective shower. " 'A party may introduce evidence to rebut that of his or her adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible.' " *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 164 (Mo.App. W.D.2006)(quoting *Govreau v. Nu-Way Concrete Forms, Inc.,* 73 S.W.3d 737, 742 (Mo.App. E.D.2002)). The recent trend is to allow evidence of the absence of other accidents to rebut proof of notice of a danger. *Pierce v. Platte-Clay Elec. Co-op. Inc.,* 769 S.W.2d 769, 774

(Mo. banc 1989)(citing *McJunkins,* 767 S.W.2d at 98–99).

> [I]f proof of similar accidents is admissible in the judge's discretion to show that ... defendant knew or should have known of the danger, then evidence of the absence of accidents during a period of similar exposure and experience likewise would be receivable to show that these facts do not exist in the case at bar. Indeed, it would seem perverse to tell a jury that one or two persons besides the plaintiff tripped on defendant's stairwell while withholding from them the further information that another thousand persons descended the same stairs without incident.

*McJunkins,* 767 S.W.2d at 98 n. 2 (quoting McCormick on Evidence, § 200, p. 590–91 (3d ed.1984)). In this case, the Heitmans presented the testimony of Ms. Scroggins, who had been a patient in Room 110 three months before Ms. Heitman's stay. Ms. Scroggins testified that she almost fell on water that had sprayed out of the shower and that she reported the shower problem to a nurse. Evidence that thirty-three other patients stayed in Room 110 between Ms. Scroggins' stay and Ms. Heitman's stay and used the shower daily without reporting a problem with or accident involving the shower was admissible to rebut Ms. Scroggins' testimony. The trial court, therefore, did not abuse its discretion in admitting evidence of the absence of prior patient complaints of a defective shower or of falls in the shower.

The judgment of the trial court is affirmed.

All concur.