Jackie Lynn JACKSON, By and Through her Next Friends, Lori JACKSON and John Jackson and Lori Jackson and John Jackson, Plaintiffs–Respondents,

v.

Frankie JACKSON, Defendant–Appellant.

No. 64101.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 3, 1994.

Niedner, Ahlheim, Bodeux & Dorsey, Reginald P. Bodeux, Timothy R. Huff, St. Charles, for defendant-appellant.

Ronald L. Boggs, St. Charles, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Jackie L. Jackson (Jackie) brought an action after being injured while visiting her grandmother (defendant) at her home. Jackie suffered a lacerated nerve after a candy dish broke and cut her leg when she attempted to retrieve some candy. A jury returned a verdict for plaintiffs. Defendant raises three points on appeal. We reverse and remand for new trial.

In March, 1990, defendant dropped a lead crystal candy dish after washing it in the sink. The dish was broken between the stem and the remainder of the lid. Defendant allowed the dish to dry and then used Krazy Glue to attach the stem to the lid. According to defendant, she never read the directions for using the Krazy Glue which are provided on the back of the package.

Approximately one month later, Jackie, age six at this time, and her parents visited defendant at her home. When Jackie lifted the candy dish lid to remove some candy, the lid broke from the stem and struck her left leg and she suffered a cut. Jackie's mother placed a bandage on the cut which was bleeding slightly. The cut did not appear to be serious.

In November, 1990, Jackie was taken to the school nurse after cutting her tongue on the playground. After treating Jackie, the nurse noticed Jackie was walking in an unusual manner. The nurse called Jackie's mother and recommended that Jackie be examined by her doctor. An examination revealed that Jackie's peroneal nerve in her left leg was lacerated. Jackie underwent several surgeries to correct the damaged nerve.

Jackie, through her parents as next friends, brought an action against defendant and her husband Arthur Jackson, Jackie's grandfather. Jackie's parents were also named as plaintiffs and sought recovery of Jackie's medical expenses. Prior to trial, plaintiffs dismissed Arthur Jackson from the suit.

Sometime before trial, plaintiffs' counsel purchased a package of Krazy Glue. It is not entirely clear from the record when this purchase took place but it appears to have been a short time before the trial commenced. The trial began on May 20, 1993, approximately three years and two months after defendant repaired the dish with the Krazy Glue. Defendant was called as a witness in the plaintiffs' case in chief. Defendant testified she no longer had the Krazy Glue she used to repair the dish. Plaintiffs offered into evidence the package of Krazy Glue that their counsel purchased. Defendant testified that the front of the package offered into evidence looked similar to the front of the package of Krazy Glue she used to repair the dish. Defendant's counsel objected to the introduction of the back of the Krazy Glue package, upon which the directions for use are provided, because of lack of foundation and the directions were hearsay. The trial court overruled defendant's objection and admitted into evidence the entire package of Krazy Glue. The jury was instructed as follows: "Your verdict must be for plaintiff Jackie Jackson if you believe: First, defendant failed to follow manufacturer's instructions [directions] in the use of Krazy Glue on the candy dish lid, and Second, that defendant was thereby negligent, and Third, as a direct result of such negligence Jackie Jackson sustained damage." The jury returned a verdict for the plaintiffs and this appeal followed.

Defendant argues in her first two points that the trial court erred in admitting the Krazy Glue directions for use because these directions constitute inadmissible hearsay and plaintiffs failed to establish a sufficient foundation. We first address plaintiffs' contention that defendant waived her right to contest the admissibility of the Krazy Glue directions. As aforementioned, plaintiffs called defendant during their case in chief and questioned her regarding her use of the Krazy Glue. On cross-examination, defendant's counsel asked her questions which, with the answers, indicated defendant complied with certain provisions of the directions. Defendant did not subsequently testify but did adopt her previous testimony in her case in chief. On appeal, plaintiffs contend the "bolstering" which occurred when defendant's counsel questioned her during plaintiffs' case in chief, defendant's adoption of

her testimony given during plaintiffs' case in chief and defendant's failure to object to the front of the Krazy Glue package constitutes waiver. An objection to the admission of evidence is waived when the objector introduces or elicits the same or similar evidence. *In re Marriage of Clark,* 801 S.W.2d 496, 499 (Mo.App.1990).

Defendant did not introduce any directions regarding how to use Krazy Glue and she testified she never read them. Defendant's other testimony merely reflected how she used the Krazy Glue to repair the dish. The fact that defendant's testimony revealed whether she complied with the directions on the package does not constitute the introduction or elicitation of the same or similar evidence. It should also be noted that when a party objects to the admission of evidence and then cross-examines a witness about the matter, the objecting party has not waived the error in admitting the evidence. *See Chester v. Shockley,* 304 S.W.2d 831, 835 (Mo.1957); McCormick, Evidence § 55 (4th ed.1992). Defendant specifically objected to the admission of the back of the Krazy Glue package and the record does not reflect that she waived her right to claim error in its admission.

We next address, in reverse order, defendant's arguments in her first two points. Defendant contends in her second point that plaintiffs failed to establish a sufficient foundation for the admission of the back of the Krazy Glue package where the directions for use are provided. We agree.

█ The admissibility of demonstrative evidence depends on relevancy, materiality and whether by proper foundation the evidence has been identified and connected with the issue. *Storm v. Ford Motor Co.,* 526 S.W.2d 875, 878 (Mo.App.1975). "When demonstrative evidence is offered, an adequate foundation for admission requires authentication that the object offered is the object involved in the controversy and remains in a condition substantially unchanged." *Id.* A foundation of this sort commonly entails testimony which traces the chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or has

been tampered with or contaminated. *Id.* (citations omitted). An adequate foundation for admission of "real" evidence requires testimony that the offered object is the object which was involved in the incident and that the object's condition is substantially unchanged. 2 McCormick, Evidence § 212 (4th ed.1992) (describing real evidence as an offered item which played "an actual and direct part in the incident or transaction giving rise to the trial.")

█ In the present case, defendant's counsel stated that the package containing the Krazy Glue that defendant used to repair the dish was not available. The analysis in this case is, therefore, somewhat different than in many chain of custody cases where the issue is whether the offered object is, in fact, the same object involved in the issue at hand. Regardless, the relevant inquiry is whether plaintiffs laid a sufficient foundation to establish a reasonable assurance that their offered package of Krazy Glue had the same directions for use as the package containing the glue defendant used to repair the dish.

Plaintiffs contend that portions of defendant's testimony established a sufficient foundation. Defendant testified that the front of the offered package appeared to be the same as the package containing the Krazy Glue she used to repair the dish. Defendant also testified the tube of glue in the offered package appeared to be the same. Defendant's recognition of the front of the package, however, is not sufficient. Defendant testified she never read the directions and that she had no recollection as to what was on the back of the package. Plaintiffs' counsel purchased the offered package of Krazy Glue more than three years after defendant used the glue to repair the dish. As defendant correctly points out, the back of the package including the directions for use could have been changed during this three year period even if the front of the package remained the same. Under these circumstances, plaintiffs failed to establish a reasonable assurance that the back of the offered package was the same as the package containing the Krazy Glue defendant used to repair the dish. Because the plaintiffs failed to lay a sufficient foundation, the trial court

erred in admitting the back of the package of Krazy Glue.

 Defendant must also show she was prejudiced by the erroneous admission of the back of the package. *Danneman v. Pickett,* 819 S.W.2d 770, 773 (Mo.App.1991). Defendant's failure to follow the directions was the central issue at trial. The jury instructions provided, in part, that their verdict must be for Jackie if defendant failed to follow the directions and she was thereby negligent. The directions on the package offered by plaintiffs provide that only one drop of glue should be used on the parts to be glued and "that too much glue will make a poor bond or no bond at all." Defendant testified she used six to eight drops to repair the dish. Based on this testimony and plaintiffs' offered package of Krazy Glue the jury could have found that defendant failed to follow the manufacturer's directions. The exhibit was the only proof of that element of the cause of action. It is apparent that the trial court's erroneous admission of the package without any foundation prejudiced defendant. The judgment must, therefore, be reversed and the cause remanded for new trial.

Defendant contends in her first point that the directions for use on the package of Krazy Glue offered by plaintiffs is inadmissible hearsay. The Southern District has held that a manual describing the use of a "BAC Verifier" was hearsay, not subject to the trade journal exception and should have been excluded. *Stuart v. Director of Revenue,* 761 S.W.2d 234, 238 (Mo.App.1988). In a subsequent case, the court held that the labels for a needle and antiseptic introduced to describe the contents therein, specifically a sterile needle and nonalcoholic antiseptic, established a circumstantial probability of trustworthiness and, therefore, an exception to the hearsay rule. *Moore v. Director of Revenue,* 811 S.W.2d 848, 852 (Mo.App.1991). Whether directions for use provided on a product's package warrants a special exception to the hearsay rule is an issue we do not decide. Given our previous holding that plaintiffs must establish a sufficient foundation, plaintiffs can easily cure any potential hearsay problem.

In her third point, defendant argues the trial court erred in giving the instruction concerning defendant's alleged failure to follow the directions. It is unlikely this issue will arise in a similar context upon retrial. We, therefore, decline to address defendant's third point.

The judgment is reversed and the cause remanded for new trial.

SIMON, P.J. and KAROHL, J., concur.