Damian HENSON, a minor By and Through his mother and Next Friend Laura LINCOLN, and Laura Lincoln, individually, Plaintiffs–Respondents,

v.

BOARD OF EDUCATION OF THE WASHINGTON SCHOOL DISTRICT, Defendant–Appellant.

No. 70920.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 27, 1997.

Priscilla F. Gunn, Evans & Dixon, St. Louis, for defendant–appellant.

Paul W. Kopsky, Donald D. Heck, Kopsky & Associates, P.C., Chesterfield, for plaintiffs–respondents.

HOFF, Judge.

The Board of Education of the Washington School District (the District) appeals from a judgment entered on a jury verdict in favor of Damian Henson and Laura Lincoln (both referred to as plaintiffs). We reverse and remand for new trial due to the trial court's errors in admitting three tree stumps plaintiffs' counsel excavated from the District's property and in prohibiting the District from introducing Henson's deposition testimony.

Henson sustained leg injuries when he fell on a hill at the Augusta Elementary School (School) while chasing a ball during recess. By and through his mother and next friend, Laura Lincoln, Henson filed this lawsuit seeking damages for the personal injuries he sustained. Lincoln also pursued a claim, individually, for the medical expenses incurred as a result of the accident. Plaintiffs named the District and Paul Suchland, the principal at the School, as defendants in the lawsuit.

Henson testified that, on November 30, 1990, he slipped on the inclined slope at the top of the hill; hit the ground about four to

five feet further down the hill; felt his left knee "hit a stump or a rock maybe. I don't know"; slipped a couple more feet; and "ended up about in the middle" of the hill. Approximately four years after Henson's fall, two attorneys in the law firm that represented plaintiffs went to the hill and excavated three tree stumps from the hillside.

During trial, the trial court granted a motion for directed verdict in favor of Suchland.[1] With respect to plaintiffs' claims against the District, the jury awarded damages in the amount of $50,000.00 in favor of Henson, awarded damages in the amount of $23,675.00 in favor of Lincoln, and assessed fifteen percent fault to Henson. In accordance with that verdict, the trial court entered judgment against the District, totaling $42,500.00 in favor of Henson and $20,123.75 in favor of Lincoln. The trial court subsequently overruled the District's motions for remittitur and for judgment notwithstanding the verdict or in the alternative for a new trial. This appeal by the District followed.

Plaintiffs move to dismiss points IV and V on appeal for failure to comply with Rule 84.04(d). After careful consideration, that motion is denied.

*Questioning of Plaintiff Henson Regarding Dangerous Nature of Hill*

In its first point on appeal, the District argues the trial court erred in sustaining plaintiffs' objection to the following question posed by the District's counsel during the cross-examination of Henson: "[o]n the day that you hurt yourself, did you think that the hill was dangerous before you went after the ball?" The District urges Henson's knowledge of the danger of the hill was relevant to the comparative fault defense.

In their second amended petition, plaintiffs alleged the existence of the steep embankment, which was covered by improperly removed tree stumps, crumbling concrete, and loose gravel, near the School's playground constituted a dangerous and unsafe condition. In its answer, the District raised comparative fault, in part, by alleging Henson failed to keep a careful lookout, chased a ball down a

1. That ruling has not been appealed.

hill he knew or should have known was slippery, and failed to comply with the School's rule to stay off the hill.

Prior to trial, the District moved in limine to prevent Theodora Briggs Sweeney, an expert plaintiffs intended to call, from testifying about the dangers of school children playing near or on the hill at the School. The trial court sustained that motion. Plaintiffs then filed a motion for reconsideration asking that Sweeney be allowed to testify regarding the unreasonably dangerous condition created by the severity of the hill's incline and its location close to the School's playground. In denying that motion, the trial court specifically provided (in a minute entry) that "[n]o one may testify as to safety." During examination of Henson, both the District and plaintiffs asked him questions soliciting information that he knew he was not allowed to be on the hill where he fell and that, on the day he fell, the ground was frosty.

The verdict-directing instruction given by the trial court advised the jury to assess a percentage of fault to the District if the jury found the playground "was not reasonably safe" because the hill "was on or adjacent to the playground." Another instruction directed the jury to assess a percentage of fault to Henson if the jury found either he "disregarded a school rule to stay off the hill, or [he] stepped on a hill which he knew or should have known was slippery."

Under the circumstances of this case, we find no error in the trial court sustaining the objection to the question whether Henson thought the hill was dangerous before he went after the ball. The basis of the "dangerousness" of the hill is not clear in the question posed and the trial court had clearly stated that no one was to testify to safety matters. Moreover, to the extent Henson's comparative fault was at issue, Henson's awareness of the prohibition against students being on the hill and the existence of frost conditions was clearly the subject of other questions asked of Henson during trial. Point denied.

### Evidence of Absence of Prior Injuries

In its second point, the District argues the trial court erred in preventing the District from introducing evidence of the absence of any prior injuries on the hill. The District asserts such evidence was admissible and relevant to show either there was no unduly dangerous condition or there was no basis for the District to realize any danger.

Evidence of the absence of prior accidents is relevant when it shows "(1) the absence of a defect or condition, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous condition, or (4) the lack of knowledge of or grounds to realize the danger." *Savant v. Lincoln Eng'g*, 899 S.W.2d 120, 122 (Mo.App. E.D.1995); *see also Carbin v. National Super Mkts., Inc.*, 823 S.W.2d 93, 94 (Mo.App. E.D.1991). For such evidence to be admissible, the proponent of the evidence must show that "no accidents occurred ... under conditions substantially similar to those faced by plaintiff and that an adequate number of those situations occurred to make the absence of accidents meaningful." *Savant*, 899 S.W.2d at 122; *see also Carbin*, 823 S.W.2d at 95. The trial court has discretion to determine whether or not a proper foundation was established for the admission of such evidence. *Savant*, 899 S.W.2d at 122; *Carbin*, 823 S.W.2d at 94. We affirm the trial court's determination unless an abuse of discretion is shown. *Savant*, 899 S.W.2d at 122.

During the District's cross-examination of Henson, the trial court sustained an unexplained objection to the following question: "Had you ever seen anybody hurt themselves on that hill before?" The District's counsel subsequently made an offer of proof that:

I intend to call Ellen Mallinckrodt as a witness. She has been the secretary of the school for twenty-two or twenty-three years, plus she went to grade school at Augusta. I'd say she's in her fifties right now would be my best guess. And I would like to call her to testify she's unaware of any other injuries on the off-limits area of the hill by any student or anyone at any

time prior to this injury. I would like to offer that into evidence.

The trial court denied the offer of proof.

We find no abuse of discretion in the trial court's ruling because there was an insufficient foundation for the admission of this evidence. The District did not demonstrate that, prior to Henson's fall, children had faced a frost covered hill and a loose ball or how often such a situation had occurred without injury. The District contends a sufficient foundation existed because Mallinckrodt testified she had worked as the school secretary for twenty-four years and was in a position to become aware of student injuries; she attended the School as a child; and the slope of the hill had not changed since Mallinckrodt attended School until after Henson's injury, when a fence was erected. We disagree. It is not the length of time a condition has existed that is significant to establish a proper foundation for this evidence, but the number of times substantially similar conditions have occurred without accident. In the absence of a demonstration of prior instances when conditions substantially similar to those faced by Henson occurred an adequate number of times to make the absence of accidents meaningful, the trial court properly prevented the District from presenting evidence of no prior injuries on the hill. Point denied.

### Photographic Evidence

■ In its third point, the District contends the trial court erred in overruling the District's objection to two enlarged photographs of Henson's injured leg. Those photographs, the District contends, were irrelevant because they were prejudicial and designed to arouse sympathy for Henson.

■ "A photograph is admissible if a witness familiar with what it shows testifies that it accurately represents the scene it purports to portray; whether a photograph is sufficiently authenticated is a preliminary question for the trial court." *Rust & Martin, Inc. v. Ashby*, 671 S.W.2d 4, 8 (Mo.App. S.D.1984). The trial court's admission of a photograph will not be disturbed unless it is an abuse of discretion. *Id.* Moreover, proof of the nature and extent of a plaintiff's injuries in a personal injury action is essential and necessary to the jury's determination. *Fravel v. Burlington N. R.R.*, 671 S.W.2d 339, 342 (Mo.App. E.D.1984) (discussing a surgeon's manipulation of the injured leg), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 907, 83 L.Ed.2d 921 (1985).

In this case Lincoln testified she visited Henson in the hospital shortly after the accident and observed the injury to Henson's leg. At a sidebar discussion, the trial court overruled the District's objection to the enlarged photographs. Lincoln then testified that each of the two enlarged photographs of Henson's leg were accurate representations of his leg at the time she saw it on November 30, 1990.

The trial court did not abuse its discretion in admitting the two pictures of Henson's injuries. Lincoln's testimony provided adequate support for the photographs' admission. Additionally, the number of admitted photographs of Henson's injuries was not excessive. Point denied.

### Admission of Tree Stumps

■ For its fourth point on appeal, the District states:

THE TRIAL COURT ERRED IN ALLOWING PAUL KOPSKY TO TESTIFY AND IDENTIFY STUMPS REMOVED FROM THE GROUND BECAUSE MR. KOPSKY WAS NOT A COMPETENT WITNESS AND THE STUMPS WERE IRRELEVANT EVIDENCE IN THAT MR. KOPSKY WAS AN ATTORNEY FOR THE PLAINTIFF, HE TESTIFIED THAT HE OBTAINED THE STUMPS IN A MANNER NOT PROVIDED FOR BY THE MISSOURI RULES OF CIVIL PROCEDURE AS HE DID NOT PROPERLY REQUEST AN INSPECTION OF PROPERTY, THE STUMPS DID NOT PROPERLY DEPICT THE CONDITION OF THE PROPERTY ENCOUNTERED BY PLAINTIFF, PLAINTIFF COULD NOT IDENTIFY WHAT HE ENCOUNTERED AS HE TORE HIS LEG, THE STUMPS WERE REMOVED FROM THE HILL FOUR YEARS AFTER THE PLAINTIFF'S INJURY, AND THE

STUMPS WERE REMOVED FROM A DIFFERENT AREA THAN WHERE PLAINTIFF TESTIFIED HE FELL.

In summary, the District challenges both the fact the trial court permitted Paul Kopsky to testify, and the fact the trial court allowed the identification by Kopsky and the admission into evidence of three tree stumps. Because we find the admission of the tree stumps constitutes reversible error, we will not address the challenge to Kopsky's testimony.[2]

The introduction into evidence of the stumps constitutes reversible error due to an insufficient foundation for their admission. *Jackson ex rel. Jackson v. Jackson*, 875 S.W.2d 590, 592–93 (Mo.App. E.D.1994). In *Jackson* plaintiffs sought damages for injuries sustained when a dish repaired by defendant with Krazy Glue broke apart. This Court held it was reversible error for the trial court to admit the back of the package of Krazy Glue which contained directions for use of the glue. *Id.* at 592–93. We found there was insufficient evidence that the tube presented to the jury, which was purchased approximately three years after the repair, was comparable to the unavailable tube defendant had used to repair the bowl. *Id.*

In determining whether an adequate foundation for admission of 'real' evidence is established, the relevant inquiry is whether there is "testimony that the offered object is the object which was involved in the incident and that the object's condition is substantially unchanged." *Id.* at 592. When the object offered into evidence is not actual-

ly the real object involved in the incident, but a similar object, the relevant inquiry is whether the proponent of the evidence "establish[es] a reasonable assurance" that the offered object is the same in all significant respects to the actual object involved in the incident. *Id.* In *Jackson*, we found plaintiffs had not satisfied the "reasonable assurance" requirement because of the three year delay between the repair and the purchase of the tube offered into evidence, and the possibility the package directions may have changed during that period. *Id.*

Whether the excavated stumps are considered "real" evidence or evidence similar to any stump purportedly involved in Henson's fall, concerns akin to those in *Jackson* are present in this case. Prior to trial the District objected to an attorney for the plaintiffs testifying about the condition of either the stumps found on the hill or the hillside. The District also objected to the use of the stumps at trial. The trial judge stated that the lawyer would be permitted to testify, but the excavated stumps would not be allowed in evidence if they were not tied to the close proximity of Henson's fall. Before Kopsky took the witness stand, the District reiterated its objections to both plaintiffs' attorney testifying and the admission of the excavated stumps. The trial judge allowed plaintiffs to present the attorney's testimony and introduce the stumps.

Henson testified he fell within four to five feet of the top of the hill and his knee hit a hard object that he could not clearly identify. Kopsky testified[3] that the excavated stumps

---

**2.** We do not, however, condone the presentation of that attorney's testimony and we expect there will be no need for its presentation during any trial proceedings on remand.

**3.** Kopsky testified he is an attorney who has been licensed to practice in Missouri for thirty-two years. Kopsky further stated his firm had been retained by plaintiffs and represented them with regard to Henson's fall on the hill at the School. In that capacity, Kopsky testified he went to the School on Sunday, September 25, 1994, to show plaintiffs' trial attorney the "general area" and to take measurements of "the general area where [Henson] was hurt." While they were taking measurements on the hill, Kopsky "knelt on something very hard. [He] then pushed the grass aside without moving the object and noted

that this was a tree stump that [his] knee hit on." He was not able to see it clearly before he felt it with his knee. He brought that stump to the trial attorney's attention "and then began to crawl around on the hill to look for others ... [and] found numerous other tree stumps.... Somewhere between seven and ten." Kopsky stated he found the stumps in "the same general area that we were concentrating on which I understood to be the area where [Henson] had hurt himself." They photographed some of the tree stumps, dug three up with their hands, and took those three with them. The three stumps plaintiffs' counsel removed from the ground were approximately "15 feet to 25 feet from ... the top of the hill." Kopsky stated that one half of one inch of the stump was above ground, the rest was below ground. He further acknowledged

were in the area 15 to 25 feet from the top of the hill, an area distinct from and not clearly close to the area where Henson fell and was injured. Additionally, the excavated stumps were acquired approximately four years after the incident and no one testified to the condition or appearance of any stump at the time of the incident. In light of the four year period between the date of the incident and the excavation of the stumps, the absence of evidence that the excavated stumps were removed from the location on the hill where Henson fell, and the lack of a description of any stump that may have been involved in the incident, plaintiffs did not establish an adequate foundation for the introduction of the stumps into evidence.

Furthermore, it is clear the District was prejudiced by the admission of the stumps. In *Jackson*, this Court found defendant was prejudiced because defendant's failure to follow the directions on the glue package was the central issue, the directions on the admitted package said to use only one drop, defendant testified she used six to eight drops to repair the dish, and "[t]he exhibit was the only proof of that element of the cause of action." *Id.* at 593. Therefore, the judgment was reversed and the cause was remanded for new trial. *Id.*

Here, the cause of Henson's fall and injury were central issues at trial. The only evidence of the condition and appearance of the stumps was the excavated stumps themselves. There was no evidence that Henson either fell or injured himself on something substantially similar to the excavated stumps. There was no evidence that the excavated stumps were in the same condition on the day of the incident as on the day they were removed from the hill. There was no evidence that the excavated stumps were located where Henson fell. Yet the excavated stumps were available for the jury to view and consider in deciding the issues in this case. Under the circumstances, the trial court erred in admitting the excavated

stumps and the resulting prejudice to the District requires a new trial.

### Admission of Teachers' Depositions

In its fifth point, the District contends the trial court erred in allowing plaintiffs to read from the depositions of Glenda Richard and Donna Richards and in prohibiting the District from reading portions of Henson's deposition. First, the District argues the deponents were available in the courtroom at the time plaintiffs presented the deposition testimony of Richard and Richards. The District also urges the statements of those deponents could not bind the District because they are teachers and not administrators at the School.

■ Rule 57.07(a)(3) allows a party to introduce any part of a deposition at trial for any purpose when the witness "is not present in court" and the trial court finds any of several circumstances set forth in the Rule applicable. Deposition testimony is inadmissible under Rule 57.07(a)(3) absent proof of the witness' unavailability at the time the deposition testimony is offered. *Nachtweih v. Maravilla*, 861 S.W.2d 164, 167–68 (Mo. App. E.D.1993); *see also Lawton v. Jewish Hosp.*, 679 S.W.2d 370, 374 (Mo.App. E.D. 1984) (finding it was error under Rule 57.07(a)(3) to admit deposition testimony of a witness who was available in the courtroom at the time the deposition testimony was offered). The burden of establishing admissibility is on the proponent of the deposition testimony. *Nachtweih*, 861 S.W.2d at 167.

■ However, when an employee's admission is relevant to the issues involved, it may be received in evidence against an employer litigant, regardless of the employee's availability, where the employee acted within the scope of the employee's authority in making the admission. *Bynote v. National Super Mkts., Inc.*, 891 S.W.2d 117, 124 (Mo. banc 1995). It is no longer necessary that the employee have executive capacity before being able to bind the employer through admissions.[4] *Id.*

there were other stumps "higher up on the hill and lower down on the hill" than the three removed stumps. Kopsky did not testify to the

location or condition of any stumps higher on the hill than the excavated stumps.

4. Therefore, the District's reliance on the conclusion in *Goff v. St. Luke's Hosp.*, 753 S.W.2d 557,

The legal file reflects that Glenda Richard and Donna Richards attended court both days of trial. During the first day of trial, plaintiffs presented portions of their depositions as admissions that bind the District. Prior to presentation of that deposition testimony to the jury, the District objected that the testimony could not bind the District because the deponents, who were teachers, did not have authority to do that and there was no evidence of any such authority.[5] The District did not mention those individuals' availability until the second day of trial when counsel and the trial court were addressing the admission of Henson's deposition testimony.

Because it is not clear that plaintiffs will introduce this same testimony during retrial upon remand, we will not address the merits of this challenge to the introduction of the teachers' deposition testimony. We are confident the District will timely and fully present any objection it has to the introduction of the teachers' deposition testimony during retrial. Moreover, we have no doubt the trial court will ably ascertain whether under the circumstances each portion of any proffered deposition testimony of the teachers constitutes either admissions of the District or other admissible evidence.

### Exclusion of Henson's Deposition

Finally, the District urges the trial court erroneously prohibited the District from introducing portions of Henson's deposition testimony as admissions of a party opponent, unless the District called Henson as a witness. Specifically, the District wanted to introduce into evidence the following testimony from Henson's deposition:

Q: Then what happened after you were playing wall ball?

A: When I kicked the ball it got out of control and it rolled down the hill, and I tried to stop it and I took about two steps and I slipped, my right leg slid out from under me.

Q: So the ball rolled to the west side and started to head for the hill?

A: Yes. It wasn't rolling fast.

Q: So you ran across the driveway area?

A: Yes.

Q: And you were going to try to get the ball before it went down the hill?

A: Yes.

Q: What happened after that?

A: After what?

Q. After you were running across the driveway and you got to the grass area?

A: I took about two steps down the hill and I slid.

Q: Had the ball already rolled down the hill when you took the two steps down the hill?

A: No, it wasn't going very fast. I reached down to get it and my leg slid out from under me.

Q: Which leg slid out?

A: My right leg.

Q: Were you in the area you already marked for me with the X and the circle?

A: Yes, I ran right to there.

Q: And after your leg slid out did you slide down the hill?

A: No.

Q: You just slid to the ground?

A: What do you mean?

Q: Did you fall after your right leg slid out?

A: Yes.

Q: After you fell did your body slide down the hill?

A: No.

Q: So did you fall at the top of the hill then?

A: Yes.

Q: And after you fell your body stayed at the top of the hill?

565–66 (Mo. banc 1988), that deposition statements of a supervisory nurse did not qualify as admissions of the hospital in which she worked because she did not have a managerial position is misplaced in light of the subsequent Missouri Supreme Court decision in *Bynote, supra.*

5. The District also set forth specific objections to certain portions of the proposed testimony. None of those objections raised the deponents' availability to the court.

A: It wasn't right at the top, it was about a foot or two down.

Q: But you were closer to the top of the hill than you were the bottom?

A: Yes.

 Rule 57.07(a)(2) explicitly provides that a party may use the deposition of an adverse party "for any purpose." When a deposition is offered as an admission by a party-opponent, the deponent's availability is not a factor in determining whether or not the deposition testimony is admissible. *State ex rel. Mo. Highway & Transp. Comm'n. v. Our Savior Lutheran Church*, 922 S.W.2d 816, 820 (Mo.App.E.D.1996). Nor must the testimony be a direct admission of the ultimate facts in issue. *Around the World Importing, Inc. v. Mercantile Trust Co., N.A.*, 795 S.W.2d 85, 89 (Mo.App. E.D.1990). Rather, the admission may be introduced into evidence "if it bears on the issue incidentally or circumstantially." *Id.* The proponent of the admission of a party-opponent must establish "1) [it is] a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; 2) the matter acknowledged [is] relevant to the cause of the party offering the admission; and, 3) the matter acknowledged [is] unfavorable to, or inconsistent with, the position now taken by the party-opponent." *Id.* The deponent must be a party to the lawsuit at the time the admission is offered. *See Nettie's Flower Garden v. SIS, Inc.*, 869 S.W.2d 226, 229–30 (Mo.App. E.D.1993).

Here, there is no question that Henson was a litigant at the time the District offered his deposition testimony. Moreover, the offered deposition testimony was Henson's voluntary acknowledgement that he fell within one or two feet of the top of the hill and did not slide further down the hill after he fell. This information is relevant to the District's challenge to the location of Henson's fall and to what may have caused the injury Henson sustained. Additionally, the testimony is inconsistent with Henson's trial testimony that he fell four to five feet down from the top of the hill and slid to the middle of the hill. Therefore, the trial court erred in excluding Henson's deposition testimony unless Henson took the witness stand.

 The trial court's refusal to permit the District to present Henson's admissions by way of deposition was prejudicial error. *United Servs. of America, Inc. v. Empire Bank*, 726 S.W.2d 439, 445 (Mo.App. S.D. 1987). The fact that Henson testified to the matters encompassed by the deposition testimony during plaintiffs' case in chief does not render the error in excluding the deposition testimony harmless, because the deposition testimony was more damaging than the trial testimony. *Wilt v. Moody*, 254 S.W.2d 15, 18 (Mo.1953), *overruled in part on other grounds*. *Anderson v. Prugh*, 364 Mo. 557, 264 S.W.2d 358 (1954).

Accordingly, the trial court's prohibition against the District reading from Henson's deposition unless Henson took the witness stand constitutes reversible error.

Points VI and VII on appeal[6] will not be expressly addressed because their resolution is not necessary to the reversal and it is not clear the issues raised in those points may arise during proceedings on remand.

The judgment in favor of plaintiffs and against the District is reversed and this matter is remanded for a new trial of plaintiffs' claims against the District in accordance with this opinion.

CRAHAN, P.J., and GRIMM, J., concur.

---

6. In Point VI the District contends the trial court engaged in cumulative error because the aggregate effect of the various errors, even if not individually reversible, served to deprive the District of a fair trial. In Point VII the District urges the trial court erred in denying the District's motion for new trial because the jury was biased and prejudiced as evidenced by the size of the verdict in that there were numerous errors throughout trial, as outlined in the District's brief on appeal.